[900 NE2d 952, 872 NYS2d 401]

In the Matter of ENRIQUE RIVERA, Respondent, v NEIL JON FIRE-TOG, a Justice of the Supreme Court, Kings County, Respondent, and CHARLES J. HYNES, District Attorney, Kings County, Appellant.

Argued October 22, 2008; decided December 2, 2008

## POINTS OF COUNSEL

*Charles J. Hynes, District Attorney,* Brooklyn (*Victor Barall* and *Leonard Joblove* of counsel), for appellant. The trial court did not abuse its discretion in declaring a mistrial, where the court reasonably concluded that the jury was genuinely deadlocked and that asking the jury whether it had reached a partial verdict might be coercive. (*People v Baptiste,* 72 NY2d 356; *Hall v Potoker,* 49 NY2d 501; *Matter of Plummer v Rothwax,* 63 NY2d 243; *United States v DiLapi,* 651 F2d 140; *Green v United States,* 355 US 184; *People v Latham,* 83 NY2d 233; *People v P.J. Video,* 68 NY2d 296, 479 US 1091; *North Carolina v Pearce,* 395 US 711; *Arizona v Washington,* 434 US 497; *Wade v Hunter,* 336 US 684.)

*Joel K. Dranove,* New York City, for respondent. I. This appeal should be dismissed, since the Appellate Division did not expressly or impliedly find new facts, appellant has not raised a substantial question of abuse as a matter of law, and the result reached is not so outrageous as to shock the conscience. (*Matter of Enright v Siedlecki,* 59 NY2d 195; *Glenbriar Co. v Lipsman,* 5 NY3d 388; *Matter of Von Bulow,* 63 NY2d 221.) II. In light of the evidence that the jury had reached a verdict on the murder count, and defense counsel's repeated requests for an inquiry as to a partial verdict, the trial court's declaration of a mistrial on that count without any inquiry into the alternative of taking a partial verdict was an improvident exercise of discretion and was not manifestly necessary. (*People v Baptiste,* 72 NY2d 356; *Matter of Rubenfeld v Appelman,* 230 AD2d 911; *Matter of Zeigler v Morgenthau,* 99 AD2d 989, 64 NY2d 932; *People v Michael,* 48 NY2d 1; *Matter of Robles v Bamberger,* 219 AD2d 243; *People v Hymes,* 208 AD2d 355.)

*Fahringer & Dubno,* New York City (*Herald Price Fahringer* and *Erica T. Dubno* of counsel), for New York State Association of Criminal Defense Lawyers, amicus curiae. Where there is ev-

idence that the jurors may have reached a partial verdict, the jurors should be polled before a mistrial, which exposes defendant to double jeopardy, is declared. (*Matter of Davis v Brown,* 87 NY2d 626; *United States v DiFrancesco,* 449 US 117; *People v Baptiste,* 72 NY2d 356; *United States v Dolah,* 245 F3d 98; *Crawford v Washington,* 541 US 36; *United States v DiLapi,* 651 F2d 140; *Duncan v Louisiana,* 391 US 145.)

## OPINION OF THE COURT

GRAFFEO, J.

In this CPLR article 78 proceeding, petitioner seeks to bar respondents from retrying him for murder on double jeopardy grounds. Petitioner was previously charged with murder and lesser included manslaughter offenses but his trial on those charges ended with a mistrial based on jury deadlock. The issue here is whether the trial judge abused his discretion when he declared a mistrial without first asking the jury whether it had reached a partial verdict, as requested by defense counsel. Under the circumstances of this case, we hold the trial court did not abuse its discretion and petitioner's reprosecution for murder is not precluded by double jeopardy principles.

## Facts and Procedural History

Petitioner Enrique Rivera was indicted for murder in the second degree (Penal Law § 125.25 [1]) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]) arising from a barroom confrontation that resulted in a stabbing death. After a five-day trial in Supreme Court, the trial judge submitted to the jury the second-degree murder count as well as the lesser included offenses of manslaughter in the first degree (intentional manslaughter—Penal Law § 125.20 [1]) and manslaughter in the second degree (reckless manslaughter—Penal Law § 125.15 [1]).[1] In accordance with *People v Helliger* (96 NY2d 462 [2001]), the court instructed the jury to consider the first-degree manslaughter count only if it first acquitted Rivera of the murder count and to consider the second-degree manslaughter count only if it found Rivera not guilty of first-degree manslaughter.

During the second day of deliberations, the jury returned a note indicating it could not reach a unanimous verdict and that it was split on Rivera's guilt. The note did not indicate the

---

1. The court dismissed the weapon count during trial.

count on which the jury disagreed. The court asked the prosecutor and defense counsel whether it should ask about the possibility of a partial verdict, but both sides rejected the offer. Instead, the judge instructed the jury to continue deliberating.[2]

The following day, in response to a jury question, the trial judge reinstructed the jury on all three counts. Later that day, the jury issued another note seeking clarification of the terms "bodily harm" and "reckless action." Interpreting the note to refer to the two manslaughter counts, the court again read its instructions on those two counts to the jury, with a reminder that the jurors must consider the second-degree manslaughter charge only if they first found Rivera not guilty of first-degree manslaughter. After a brief period of deliberations, the jury sent a second deadlock note. With the consent of the parties, the trial judge gave the jury an *Allen* charge (*see Allen v United States*, 164 US 492 [1896]).

On the fourth day of deliberations, the court complied with the jury's request to provide it with a written copy of all three charges. The jury later returned a note advising that one of the jurors had air travel plans that evening. After discussions with counsel, the court suggested that a question be posed to the jury regarding whether it had reached a verdict on any of the counts. The prosecutor objected, asserting that the jury had given no indication that it had reached a verdict on any of the three counts. Defense counsel countered that there was some indication the jury had progressed past the first count and requested the court to inquire about the possibility of a partial verdict. The judge agreed that there was an inference that the jury may have moved past the top count, but noted that the jury never declared that it had reached a partial verdict. The judge decided not to ask about a partial verdict and the case was adjourned for the weekend.

Deliberations resumed on Monday morning, at which time the jury requested a copy of the "explanation of criteria" for all three charges. The court supplied the requested information. In the afternoon of the sixth day of deliberations, the jury asked again for further clarification regarding all three charges and the court complied. The jury subsequently submitted a third

---

2. We disagree with the dissent's inference that the trial court discouraged the jury from returning a partial verdict. Although the trial judge informed the jury that it need not "put a tally on the note" in response to the split vote, he did not suggest that the jurors could not reach a unanimous verdict on any of the counts.

deadlock note, stating that "after five and a half days of much discussion and review of the court exhibits and reading of the court testimonies, opinions remain unchanged and we cannot come to a unanimous decision." The prosecutor moved for a mistrial and defense counsel requested an inquiry into the possibility of a partial verdict in view of the "extraordinar[y] amount of time" that the jury had deliberated. In response, the prosecutor asserted that there was no suggestion that the jury had reached a partial verdict because it had repeatedly asked for a copy of all three counts.

The trial court declared a mistrial, declining to ask the jury if it had reached a partial verdict. The court observed that it had no duty to inquire since CPL 310.70 (1) requires the taking of a partial verdict only if the jury "declares" that it has reached a verdict. The court determined that any inquiry at this point "would be suggesting [that] they have to reach at least some form of verdict," which the court feared could be coercive.

Months later, Rivera filed a written motion to dismiss the indictment on double jeopardy grounds, arguing that the trial court's refusal to question whether the jury had attained a partial verdict barred retrial. Supreme Court denied the motion.

Rivera then commenced this article 78 proceeding in the nature of prohibition against respondents Neil Jon Firetog, a Justice of the Supreme Court, Kings County, and Charles J. Hynes, District Attorney, Kings County, seeking to prevent a retrial. The Appellate Division, with one Justice dissenting, granted the petition. The majority held that the jury's note regarding the manslaughter counts constituted "some evidence" that the jury had reached a verdict on the murder count and found that the trial court abused its discretion in declaring a mistrial (44 AD3d 957, 958 [2d Dept 2007]). Although the majority determined that double jeopardy principles prevented Rivera's retrial on the murder charge, it concluded that he could be retried on the manslaughter counts provided the People represented appropriate charges to another grand jury. The dissenting Justice would have denied the petition, finding that retrial of the murder count was not precluded. We granted the District Attorney leave to appeal (10 NY3d 703 [2008]) and now reverse the judgment of the Appellate Division and dismiss the petition.

## Discussion

The District Attorney contends that, under the circumstances of this case, the trial judge providently exercised his discretion

in concluding that there was a manifest necessity to declare a mistrial, and that retrying Rivera for murder would therefore not offend the constitutional double jeopardy prohibition. Rivera, joined by amicus New York State Association of Criminal Defense Lawyers, counters that defense counsel's request for a partial verdict, coupled with the indication that the jury had progressed beyond the murder count based on its request for reinstruction on the manslaughter counts, obligated the trial court to inquire into the possibility of a partial verdict before discharging the jury on deadlock grounds.[3]

The Double Jeopardy Clauses of the State and Federal Constitutions provide that the state may not prosecute a defendant twice for the same offense (*see* NY Const, art I, § 6; US Const 5th Amend). Because jeopardy attaches when a jury is impaneled and sworn (*see* CPL 40.30 [1] [b]), the constitutional protection also embraces "the defendant's right to be free from reprosecution if the first trial has not continued to conclusion" (*People v Baptiste*, 72 NY2d 356, 359 [1988]; *see also Arizona v Washington*, 434 US 497, 503 [1978]). As a general principle, the People are entitled to only one opportunity to compel a defendant to stand trial because the "defendant possesses a 'valued right' to have his trial completed by a particular tribunal on the first presentation of the evidence" (*Baptiste*, 72 NY2d at 359-360).

Nevertheless, if the merits of the charges have not been resolved, the right to have a trial completed by a specific tribunal "may be subordinate to the public interest in seeing that a criminal prosecution proceed to verdict" (*id.* at 360 [internal quotation marks and citations omitted]). In the oft-quoted words of Justice Story, the court may exercise its power to declare a mistrial when, "taking all the circumstances into consideration, there is a manifest necessity for the act" (*United States v Perez*, 9 Wheat [22 US] 579, 580 [1824]). The classic example of charges that may be retried after the termination of a trial without the defendant's consent occurs when the trial court discharges a genuinely deadlocked jury (*see Baptiste*, 72 NY2d at 360). To justify a mistrial on deadlock grounds, it must be "clear that the jury is hopelessly deadlocked and that there is no reasonable probability it can agree" (*id.*; *see also* CPL 310.60 [1] [a]).

---

**3.** Rivera does not take issue with the mistrial as to the manslaughter counts.

It is well settled that a trial judge's determination regarding the declaration of a mistrial on jury deadlock grounds involves the exercise of judicial discretion (*see Baptiste*, 72 NY2d at 360; *Arizona*, 434 US at 509 [observing that "in this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury"]). We have made clear that a trial court's decision "is entitled to great deference by reviewing courts for it is best situated to take all the circumstances of the particular proceeding into account and determine whether a mistrial is in fact required" (*Baptiste*, 72 NY2d at 360). Moreover, the failure to accord "great deference" to a trial court's determination

> "might well encourage a needless waste of judicial resources and time by requiring further deliberation of juries that are hopelessly deadlocked and, more drastically, might similarly encourage the employment of untoward pressure upon juries or, simply, their eventual exhaustion to break deadlocks at the risk of unjust verdicts" (*Matter of Plummer v Rothwax*, 63 NY2d 243, 250 [1984] [internal quotation marks and citations omitted]).

At the same time, trial courts are not free to act without limitation. We have articulated a number of factors that a trial court should consider before exercising discretion, including "the length and complexity of the trial, the length of the deliberations, the extent and nature of the communications between the court and the jury, and the potential effects of requiring further deliberation" (*id.* at 251). Additionally, reviewing courts will examine whether the trial court "properly explored the appropriate alternatives" (*Hall v Potoker*, 49 NY2d 501, 505 [1980]).

Applying these principles, we perceive no abuse of discretion in the trial court's determination to declare a mistrial on the basis of jury deadlock. It is notable that the jury's deliberations—lasting nearly six days—exceeded the duration of the trial itself. During this period, the jury informed the court on three occasions that it could not reach a unanimous verdict. In response, the court appropriately explored alternatives to a mistrial. After receiving the first deadlock note relatively early in the deliberation process, the trial judge considered the option of asking whether the jury had reached a verdict on any of the counts but, when both parties declined, directed the jury to

continue deliberating. With the consent of the parties, the court gave the jury an *Allen* charge after the second deadlock note. Significantly, after the jury requested clarification of the manslaughter instructions, it sought copies of all three charges at three different junctures, indicating that it may not have resolved a verdict on any of the counts. Finally, the court discharged the panel following the third deadlock note, reasoning that further deliberations would be futile or could lead to a coerced verdict. Under these circumstances, we believe the trial court reasonably determined that there was a manifest necessity to declare a mistrial. Retrial on the indictment for second-degree murder therefore poses no double jeopardy problem.

In finding that the trial court improvidently exercised its discretion by declaring a mistrial on the murder count, the Appellate Division majority relied on *Matter of Robles v Bamberger* (219 AD2d 243 [1st Dept 1996], *lv denied* 88 NY2d 809 [1996], *appeal dismissed* 88 NY2d 962 [1996]). *Robles*, however, is readily distinguishable. There, the Appellate Division concluded that the trial court erred in declaring a mistrial based on juror disqualification without inquiring into whether the jury had reached a partial verdict, as requested by defense counsel. Significantly, the Appellate Division observed that there was "overwhelming evidence" that the jury had agreed on at least one count, including a note from a juror stating that "[o]ne decision has already been made and agreed by all of us" (*id.* at 247). Additionally, the trial court's examination of another juror confirmed that the jury had reached agreement on one of the counts (*see id.*).

Here, the evidence that the jury had reached a verdict on any of the counts was far less certain. Although the trial judge at one point earlier in the deliberations found that there was an inference that the jury may have progressed past the murder count based on the jury's manslaughter note, the jury did not clearly indicate that it had in fact reached a partial verdict. Furthermore, the jury subsequently requested reinstruction on all three charges on three separate occasions, a fact the trial court acknowledged when it ultimately denied Rivera's request to poll the jury about the possibility of a partial verdict.

Finally, *Matter of Oliver v Justices of N.Y. Supreme Ct. of N.Y. County* (36 NY2d 53 [1974]) does not compel a different result. In *Oliver*, the petitioner was tried on one count of murder and

the lesser included offense of first-degree manslaughter.[4] After receiving the case, the jury alerted the trial judge that it had reached a partial verdict and was instructed to continue deliberating. Later, the jury reported that it was hopelessly deadlocked and the trial court declared a mistrial. At no point did the jury indicate the nature of the partial verdict, nor did defense counsel ever seek clarification or ask for the taking of a partial verdict. The petitioner then commenced an article 78 proceeding seeking to prohibit retrial on double jeopardy grounds, arguing that the first jury was improperly discharged.

This Court in *Oliver* held that double jeopardy principles did not preclude reprosecution for murder. We acknowledged that the trial court was permitted to refuse to accept the declared partial verdict and direct the jury to continue deliberating under CPL 310.70 (1) (b) (ii), but noted that the trial court's failure to instruct the jury to resume its deliberation on "the entire case" as required by the statute left open the possibility that the jury may or may not have recognized that it could properly reopen reconsideration of the partial verdict. We therefore determined that the jury's subsequent declaration that it was deadlocked was ambiguous, because it was unclear whether the jury was deadlocked as to both counts or just one. Because the petitioner never sought to clarify the nature of the partial verdict when it was first announced or the status of the partial verdict when the jury declared itself to be deadlocked, we concluded there was no double jeopardy obstacle to retrial.

Although our decision in *Oliver* was premised in large part on the petitioner's failure to inquire into the status of a previously declared partial verdict, we did not suggest that a trial judge must question the jury about the possibility of a partial verdict as a matter of constitutional concern whenever requested by defense counsel. Critically, while the jury in *Oliver* specifically stated that it had reached a partial verdict (*see* CPL 310.70), the jury here never made such a declaration. In any event, we have repeatedly stressed that no per se rules or mechanical formulas apply to mistrial determinations (*see Baptiste*, 72 NY2d at 361; *Plummer*, 63 NY2d at 250), and we decline to create one in this case (*see United States v MacQueen*, 596 F2d 76, 82 [2d Cir 1979] [refusing to "adopt a (p)er se rule that a mistrial is

---

4. The jury was not given an "acquit-first" instruction, as required by our later decisions in *People v Boettcher* (69 NY2d 174 [1987]) and *People v Helliger* (96 NY2d 462 [2001]). Therefore, the jury in *Oliver* was free to reach a verdict on the manslaughter count without first agreeing on the murder count.

improperly declared whenever the trial judge fails to specifically inquire as to the possibility of a partial verdict"]).

Accordingly, the judgment of the Appellate Division should be reversed, without costs, and the petition dismissed.

PIGOTT, J. (dissenting). Because I agree with the Appellate Division that the trial judge abused his discretion in declaring a mistrial on all of the counts against defendant without inquiring into a partial verdict, I respectfully dissent.

During the 5½ days of jury deliberations, the trial judge on two separate occasions indicated that he believed that there was at least an inference given by the jury that it had reached a verdict on the first count of the indictment. On the first occasion, the trial judge on his own initiative asked if either party wanted him to inquire about a partial verdict, stating his belief that it would be appropriate to do so. At that time both parties declined, since it was early in the deliberations and they were likely hoping that the jury would soon reach a complete verdict.

On the fourth day of deliberations, the judge once again asked the parties whether he should inquire into whether the jury had reached a verdict on any count or whether it was still deadlocked. When the prosecutor stated that she believed the jury had not given any indication of a partial verdict, the trial judge disagreed, responding that there was an inference that it had. Despite this, the trial judge refused to grant defense counsel's request that the jury be asked if it had reached a partial verdict.

Although the majority recognizes that there was some evidence that the jury may have reached a verdict on one of the counts, it nevertheless finds that the trial judge did not abuse his discretion because the jury "did not clearly indicate that it had in fact reached a partial verdict" (*see* majority op at 508). In other words, short of the jury declaring to the judge that it had reached a partial verdict, as the jury did in *Matter of Robles v Bamberger* (219 AD2d 243 [1st Dept 1996], *lv denied* 88 NY2d 809 [1996], *appeal dismissed* 88 NY2d 962 [1996]), the majority finds no reason for the court to ask about one.

The problem with that reasoning is that the jury was unaware that it could render a partial verdict; and while it is true that juries should neither be encouraged nor discouraged to give a partial verdict, it is clear that they should at least be aware of that option (*see United States v Dolah*, 245 F3d 98 [2d Cir 2001]). This is particularly true in situations such as the one here, where the jury is struggling and there is some indication

that it has reached a verdict on one or more counts of the indictment.

Here, the guidance given to the jury was that it should not report any partial verdict at all. The first note the jury sent indicated that it was unable to come to a unanimous verdict and also contained a "vote" of the jurors' positions. In response, the trial judge advised the jury that it need not indicate any vote or tally on its notes. By doing so, the judge, in my view, discouraged it from later providing the court with any indication that it had reached a partial verdict. The jury therefore had no guidance whatsoever on what to do if it had in fact reached a verdict on any count of the indictment.

That is not to say that in every case the court must inquire into whether a jury has reached a partial verdict. Rather, trial judges should be encouraged to inform the jury, when appropriate, of the possibility of rendering a partial verdict, particularly in a case such as this, where the jurors had deliberated for a substantial period of time and the trial judge recognized that they may have, indeed, reached a partial verdict.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH and JONES concur with Judge GRAFFEO; Judge PIGOTT dissents in a separate opinion.

Judgment reversed, etc.