[949 NE2d 479, 925 NYS2d 388]

In the Matter of EDDY MARTE et al., Appellants, v CAROL BERKMAN, Justice of the Supreme Court, State of New York, et al., Respondents.

Argued March 22, 2011; decided May 5, 2011

## APPEARANCES OF COUNSEL

*David Segal*, New York City, for Eddy Marte, appellant.

*Robert Blossner*, New York City, for Luis Marte, appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Michael J. Siudzinski* of counsel), for Carol Berkman, respondent.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Martin J. Foncello* and *Alice Wiseman* of counsel), for New York County District Attorney, respondent.

## OPINION OF THE COURT

MEMORANDUM.

The judgment of the Appellate Division should be affirmed, without costs, and the certified question not answered upon the ground that it is unnecessary.

"While express consent to a mistrial is preferable, defendant's consent may in some cases be implied from the circumstances leading up to the dismissal of the jury" and the question of whether the defense consented to a mistrial involves a factual determination by the lower courts that may not be disturbed by this Court if there is any support for that finding in the record (*People v Ferguson*, 67 NY2d 383, 388-389 [1986]). In this case, there is record support for the Appellate Division conclusion that defendants impliedly consented to the mistrial. The jury submitted a note stating that a verdict had been reached on two counts and that it was at an impasse on others. At the *O'Rama* conference conducted to determine how the court should respond to this note, the trial judge indicated that he intended to take a partial verdict and declare a mistrial on the undecided charges. When he then asked defense counsel if they wanted to be heard, counsel for Eddy Marte responded "no" and counsel for the codefendant remained silent. After the court took the partial verdict but before it discharged the jury,

the judge again inquired of defense counsel if there was anything they wanted to put on the record. Neither attorney responded. Thus, there was ample basis on the record for the trial court to conclude that defendants agreed that a mistrial on the undecided charges was the appropriate course of action.

Contrary to the conclusion reached by the dissent, nothing that occurred at the conference could have led counsel to reasonably believe that the court was deferring a decision concerning the proper response to the note. When the prosecutor agreed that a mistrial was warranted and the defense voiced no disagreement—despite being asked their views—there was no reason for the court to deviate from its initial inclination.

Defendants' contention that there could not have been implied consent as a matter of law because they objected to the mistrial after the jury was discharged lacks merit. The purpose of an *O'Rama* conference is for the attorneys to advise the court concerning the appropriate response to a jury note in order to assist the court in averting error. The dissent overlooks this principle. Under its analysis, defense attorneys would have no obligation to meaningfully participate in *O'Rama* conferences but could simply say nothing when a trial judge articulates a proposed response, leaving the false impression of acquiescence even while anticipating a subsequent objection. If this were permissible, attorneys could—by their silence—lull the court into taking actions that could not later be undone.

Our *O'Rama* jurisprudence compels rejection of this approach. If defendants believed, as they now assert, that the court should have taken the partial verdict followed by an *Allen* charge directing the jury to continue deliberations, the time to offer that suggestion was at the *O'Rama* conference. Similarly, if defense counsel were unprepared to consent or object to a mistrial during the conference because they did not yet know what the verdict would be, this too should have been conveyed to the court at the conference.* This would have put the court on notice that the defense did not agree that the tenor and length of deliberations, coupled with the jury's declaration concerning its inability to reach agreement, warranted a mistrial (had such no-

---

* The dissent speculates that counsel may have intended to listen to the interaction between the court and the jury during the ensuing proceedings before deciding whether to consent to the mistrial. While this is certainly possible—and it would have been a reasonable strategy—it is not supported by anything in the record. Moreover, if this was the case, counsels' failure to speak up and articulate this intention at the *O'Rama* conference is both inexplicable and inexcusable.

tice been given, the court might have altered course in a number of ways, including revisiting its decision to accept the partial verdict). Certainly, once the verdict was announced and defense counsel nonetheless remained mute when asked their views, the inference that defense counsel concurred with the court's decision to grant a mistrial was even more apparent. Moreover, in a case like this where the court informed defense counsel in advance how it planned to respond to the jury note, it is particularly appropriate for a reviewing court to focus on "the circumstances leading up to the dismissal of the jury" (*Ferguson* at 388), not statements defense counsel made after the jury had been discharged.

Because we find no basis to disturb the Appellate Division's factual finding of implied consent, we have no occasion to address the People's alternative argument that there was manifest necessity for the mistrial. In that regard, however, we note that there is a relationship between the deficiencies in the record highlighted by the dissent and defense counsels' response when the court expressed its intent to declare a mistrial. Had either attorney addressed a concern relating to that decision at that time, an inquiry concerning the nature of the jury's impasse and the likelihood of ever reaching a verdict on the undecided counts would undoubtedly have ensued—creating a record that would facilitate appellate review.

CIPARICK, J. (dissenting). Although a defendant's consent to a mistrial "may in some cases be implied from the circumstances" (*People v Ferguson*, 67 NY2d 383, 388 [1986]), this is not such a case.

Summarizing the record, the majority states that "the trial judge indicated that he intended to . . . declare a mistrial" (majority mem at 875). In fact, the court only announced its "inclination" to declare a mistrial during an *O'Rama* conference addressing a jury note which stated that the jury had reached a verdict on two of the charges, but was otherwise at an "impasse." At that point, the court had not inquired whether the jury might still be able to reach a verdict on the remaining counts in a reasonable period of time (*see* CPL 310.70 [1] [a]; 310.60 [1] [a]; *Matter of Rivera v Firetog*, 11 NY3d 501, 506 [2008]), and there is no consideration of this question on the record. Thus, when the court stated its inclination, defense counsel may have reasonably inferred that the court was deferring any decision pending further interaction with the jury. Further, counsel may have been waiting to view that interaction before deciding whether to consent.

When the jury was brought in, it returned a partial verdict acquitting both defendants of two of the three counts in the indictment, attempt to commit robbery in the first degree and attempt to commit robbery in the second degree. The foreperson confirmed that the jury "had not reached a decision" on the third count in the indictment or the three lesser included counts. After taking the partial verdict and hearing that the jury was otherwise "undecided," the court asked counsel if they had "anything for the record." They did not. It was not obvious, however, that the court's next step would be to declare a mistrial without further inquiry. That only became evident when the court proceeded to briefly thank the jurors and discharge them. The court never gave defense counsel an opportunity to respond to its decision to declare a mistrial, and defendants, petitioners here, cannot be said to have implicitly consented.

The majority's reliance on *Ferguson* (67 NY2d 383 [1986]) is misplaced. In that case, the judge informed the attorneys that a juror was hospitalized, there were no alternates, and she was considering a mistrial—a decision based entirely on the juror's absence, and so plainly not contingent on anything further happening in the courtroom. When proceedings recommenced, the court unequivocally stated that it was going to declare a mistrial, and defense counsel failed to object (*id.* at 387). In that context, we held that the defendant's consent could be implied. We have never suggested, however, that a defendant can implicitly consent to the declaration of a mistrial before the court definitively determines its course. Although defense counsel here must have realized at some point while the court was thanking and dismissing the jury that there would be no verdict on the third count, that is not the type of silence in the face of a clear opportunity for consent that may substitute for explicit consent (*cf. Ferguson*, 67 NY2d at 388-389). In any event, the court thanked and dismissed the jury in a few short sentences, after which defense counsel promptly approached the bench and requested that the jury be held. In effect, this constituted a timely objection.

In the absence of defendants' consent, we must consider whether the constitutional bar to placing a defendant twice in jeopardy for the same offense prevents petitioners from being retried (*see* NY Const, art I, § 6; US Const 5th Amend; *Matter of Davis v Brown*, 87 NY2d 626, 629-630 [1996]). A defendant may be reprosecuted only if the trial court properly took "all the circumstances into consideration" and found "manifest necessity"

for a declaration of mistrial (*Matter of Rivera*, 11 NY3d at 506, quoting *United States v Perez*, 9 Wheat [22 US] 579, 580 [1824]). The "classic example" of manifest necessity is "a genuinely deadlocked jury" (*id.*).

"To justify a mistrial on deadlock grounds, it must be 'clear that the jury is hopelessly deadlocked and that there is no reasonable probability it can agree' " (*id.*, quoting *People v Baptiste*, 72 NY2d 356, 360 [1988]; *see also* CPL 310.70 [1] [a]; 310.60 [1] [a] [A court may declare a mistrial "only when . . . (t)he jury has deliberated for an extensive period of time . . . and the court is satisfied that . . . agreement is unlikely within a reasonable time"]). We afford great deference to a trial court's determination that a mistrial is necessary (*see Matter of Rivera*, 11 NY3d at 507; *Baptiste*, 72 NY2d at 360), and have "repeatedly stressed that no per se rules or mechanical formulas apply to mistrial determinations" (*Matter of Rivera*, 11 NY3d at 509). The trial court should consider " 'the length and complexity of the trial, the length of the deliberations, the extent and nature of the communications between the court and the jury, and the potential effects of requiring further deliberation' " (*id.* at 507, quoting *Matter of Plummer v Rothwax*, 63 NY2d 243, 251 [1984]), as well as "appropriate alternatives" (*id.*, quoting *Hall v Potoker*, 49 NY2d 501, 505 [1980]).

Our case law illustrates various ways in which these factors can combine to produce satisfactory assurance that a mistrial is necessary. In *Matter of Plummer*, for example, we upheld a mistrial declaration that followed only 4½ hours of deliberation (63 NY2d at 251). That case, however, was "simple," the trial lasted just over an afternoon, and "the Judge questioned the jury through its foreperson who insisted that further deliberations would be fruitless" (*id.* at 252). Alternately, in *Matter of Rivera*, although the judge never questioned the jury, the deliberations lasted almost six days—longer than the trial—during which the jury sent out three deadlock notes (11 NY3d at 508).

Here, the jury deliberated for only two days following an eight-day trial, with an alternate juror being seated at approximately 12:30 P.M. on the second day of deliberations. Before the alternate was seated, the jury sent out several notes requesting a variety of records, witness testimony, and legal instruction. Just before noon on the second day of deliberations, a Friday, the jury sent out a note saying it had reached a verdict on one count and was "close to a decision" on another, but was "evenly split on the remaining counts and . . . at an impasse."

The court responded by giving a modified *Allen* charge. Shortly thereafter, the jury requested "guidance" on the lesser included charges and the court provided some. The alternate juror was then seated, and the court instructed the jury to "begin deliberations anew in regard to" the new juror. Late that afternoon, after three more notes requesting clarification and testimony, the jury sent out a note saying it had reached a verdict on two of the charges, but was "at an impasse" on the remaining charges. It was in response to this note that the court, without further inquiry or instruction, took a partial verdict and declared a mistrial on the remaining counts.

This record does not support a finding that there was "no reasonable probability" that the jurors would reach an agreement.* Although the jury said it was at an impasse and the foreperson announced while giving the partial verdict that it was "undecided" on the remaining counts, the court never inquired whether further deliberation might be productive. Given the brevity of the deliberations, relative to the length and complexity of the trial, some further inquiry was required, particularly since the jury had been actively requesting evidence and legal instruction as late as 3:00 P.M. that afternoon.

That two of the jurors wanted to conclude deliberations that Friday due to personal engagements the following week did not compel a mistrial. Although courts must be wary of extending deliberations to the point of exerting coercive pressure on jurors (*see Arizona v Washington*, 434 US 497, 509-510 [1978]; *Matter of Plummer*, 63 NY2d at 250), the court here had noncoercive alternatives: it could have held the jury later on Friday; it could have investigated the duration of the jurors' personal commitments the following week and adjourned the proceedings accordingly; or it could even have continued with 11 jurors with defense consent.

Because Supreme Court never adequately determined that the jury was hopelessly deadlocked and there was no reasonable probability it would reach a verdict, and because it appears that further deliberation was possible without fear of coercing a verdict, there was no manifest necessity for the court to declare a mistrial. Since petitioners never consented to the mistrial, in

---

* The majority suggests that if defense counsel had requested that the court create a record demonstrating manifest necessity, it might have done so (majority mem at 877). The question, however, is whether the trial court abused its discretion by declaring a mistrial based on the record before it (*see Matter of Rivera*, 11 NY3d at 507).

my view, defendants cannot be retried. Accordingly, I would reverse the judgment of the Appellate Division and grant the petition.

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur in memorandum; Judge CIPARICK dissents and votes to reverse in an opinion in which Chief Judge LIPPMAN concurs.

Judgment affirmed, etc.