Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/22/2018 08:15 AM CDT

State of Nebraska, appellee, v. Antonio Leon-Simaj,
also known as Antonio Leon-Batz, appellant.

___ N.W.2d ___

Filed June 22, 2018.    No. S-17-540.

1.  **Pleadings.** Issues regarding the grant or denial of a plea in bar are questions of law.
2.  **Evidence: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.
3.  **Double Jeopardy.** The Double Jeopardy Clauses of both the federal and Nebraska Constitutions protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.
4.  **Constitutional Law: Motions for Mistrial.** When the defendant objects to the declaration of a mistrial, the defendant's right to have a trial completed by a particular tribunal will be subordinated to the public's interest in fair trials ending in just judgments, when there was a manifest necessity for the mistrial.
5.  **Double Jeopardy: Motions for Mistrial: Prosecuting Attorneys.** When a mistrial is declared at the defendant's request or with the defendant's consent, reprosecution is barred only when the prosecution's conduct was intended to provoke the defendant into moving for or consenting to the mistrial.
6.  **Double Jeopardy: Motions for Mistrial: Appeal and Error.** When a mistrial is declared, the important consideration for purposes of the Double Jeopardy Clause is that the defendant retains primary control over the course to be followed in the event of an error.
7.  **Motions for Mistrial.** When a mistrial is declared, it is fair to expect the defendant to participate in preserving his or her right to have the trial completed by a particular tribunal.
8.  ____. When a court suggests a mistrial, if silence were not construed as consent, attorneys could lull the court into taking actions that could not later be undone.

9. **Double Jeopardy: Motions for Mistrial.** Requiring the defendant to make an affirmative choice concerning a mistrial avoids transforming the protection against double jeopardy into an abusive weapon used by a defendant to avoid prosecution.

10. **Motions for Mistrial.** It is not too onerous to require defense counsel to clearly state whether he or she objects to the court's consideration of a mistrial.

11. **Double Jeopardy: Motions for Mistrial: Prosecuting Attorneys.** Where a mistrial is under sua sponte consideration by the court and the defendant is given the opportunity to object, but fails to timely and explicitly do so, that defendant will be held to have impliedly consented to the mistrial, and double jeopardy will not bar a retrial unless the defendant demonstrates such consent was procured through the prosecutorial conduct intended to provoke the defendant into moving for or consenting to a mistrial.

12. **Judgments: Records: Appeal and Error.** Where the record adequately demonstrates that the decision of a trial court is correct—although such correctness is based on a ground or reason different from that assigned by the trial court—an appellate court will affirm.

13. **Constitutional Law: Motions for Mistrial: Records.** Whether the defendant consented to a mistrial involves the application of a constitutional principle to historic facts that are reflected in the record.

Appeal from the District Court for Colfax County: Mary C. Gilbride, Judge. Affirmed.

Christopher J. Roth, of Forney Roth, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Riedmann, Judge, and Martinez, District Judge.

Martinez, District Judge.
### NATURE OF CASE
The defendant appeals from the denial of his plea in bar, alleging that retrial following a mistrial would violate prohibitions against double jeopardy.[1] The mistrial was declared by the trial court following the court's determination that

---

[1] See U.S. Const. amend. V; Neb. Const. art. I, § 12.

defense counsel's questioning of the witness, a minor child and hereinafter referred to as "E.Z.," was improper and that the prejudice could not be remedied by a curative jury instruction. Defense counsel did not explicitly object to a mistrial when given the opportunity to do so, but apologized for the improper questioning and, at the court's request, presented case law wherein curative instructions were held to be sufficient to remedy improper references at trial to inadmissible evidence. At issue is whether the defendant implicitly consented to the mistrial and, if not, whether there was a manifest necessity for a mistrial.

## BACKGROUND

Antonio Leon-Simaj, also known as Antonio Leon-Batz, was charged with one count of first degree sexual assault and two counts of possession of child pornography stemming from his relationship with E.Z. E.Z. was 14 years old at the time of trial and 13 years old at the time of the events in question.

### E.Z.'s Testimony

There are no pretrial motions in the record. Trial began with the testimony of E.Z., who testified that she and Leon-Simaj engaged in sexual intercourse on approximately 10 different occasions.

E.Z. was questioned about exhibits containing text messages between Leon-Simaj and E.Z. She confirmed that several text messages sent to Leon-Simaj contained pictures of her breasts and vagina.

E.Z. testified that at one point, she thought she might be pregnant. She read out loud text messages in which she asked Leon-Simaj to buy her a pregnancy test and in which Leon-Simaj said he would do so if she sent him a picture of herself without her underwear on. She did, and Leon-Simaj purchased a pregnancy test for her. E.Z. was not pregnant.

After E.Z.'s father discovered the relationship between E.Z. and Leon-Simaj, the matter was reported to law enforcement and E.Z. was taken to a hospital, where she was

interviewed. During cross-examination, E.Z. admitted that she deleted all social media messages from Leon-Simaj the day before being interviewed. She also admitted that she had lied at the hospital by telling the interviewer that she had not called Leon-Simaj. E.Z. admitted, further, that she had falsely told the interviewer that she did not have Leon-Simaj's telephone number.

E.Z. initially denied that she lied to the interviewer when she had said she was no longer texting Leon-Simaj. But when confronted with text messages, E.Z. admitted she had lied to the interviewer and had, in effect, just lied to the jury.

Defense counsel elicited testimony from E.Z. in which she described how she had told Leon-Simaj she was pregnant, even though she knew at that point that she was not. E.Z. read for the jury text messages in which she told Leon-Simaj that her pregnancy "hurt" and that she no longer wished to see Leon-Simaj or for him to have a relationship with the baby. In other text messages, E.Z. made reference to Leon-Simaj's having a wife and told Leon-Simaj it was his fault "[m]y baby will not be with his daddy . . . ."

Defense counsel pointed out that a total of 10 text messages referred to a baby that E.Z. knew did not exist. E.Z. admitted that, thus, she had lied 10 times.

At that point, defense counsel moved on to E.Z.'s possible past criminal behavior. Defense counsel asked E.Z., "Now . . . you've been arrested before; correct?" E.Z. answered, "Yes." Defense counsel immediately asked, "For breaking into people's yards and stealing bicycles?"

## OBJECTION AND DECLARATION
## OF MISTRIAL

The prosecution objected to this line of questioning as involving improper character evidence.

Defense counsel initially responded that he wished to make an offer of proof. Outside the presence of the jury, the court expressed its opinion that the line of questioning was improper and asked defense counsel for further explanation as to what

defense counsel's offer of proof was and why it should come in. Defense counsel withdrew the request.

After a short recess to confer with the guardian ad litem, the prosecutor asked for a curative instruction. But when further pressed by the district court whether the prosecutor thought a curative instruction was "enough," it was at that point she responded, "No."

The court thereafter asked the prosecutor what the other option would be. The prosecutor responded that the other option would be to call for a mistrial.

The court asked defense counsel for his argument. Defense counsel conceded that it was improper to ask E.Z. if she had been arrested. Defense counsel apologized and explained that he had thought it was proper under Neb. Rev. Stat. § 27-608 (Reissue 2016) to elicit testimony as to specific instances of conduct.

The prosecutor pointed out that she had prosecuted E.Z. in the case that defense counsel was referencing and stated, "I can personally tell you no one was robbed, no one was stolen from, with regard to that. That is an absolute fabrication, the facts of that case, and I know it personally."

The court directed the parties to research whether an instruction could cure the error, granting them a short recess to do so.

After the recess, the prosecutor presented case law and argued that it would be appropriate for the court to call for a mistrial. The prosecutor also stated, "There is a mechanism if the defense wishes to object to a mistrial."

Defense counsel did not respond with an objection to the court's declaring a mistrial. Instead, defense counsel apologized, explaining that he had believed he was "within 608," but that he "was wrong," at least inasmuch as he failed to understand the applicability of Neb. Rev. Stat. § 27-404 (Reissue 2016). Defense counsel presented for the court's consideration three cases where curative instructions were held to be sufficient to remedy improper references at trial to inadmissible evidence.

The court announced that it would be declaring a mistrial. The court reasoned that the proverbial "bell . . . cannot be unrung." The court explained that in the middle of impeachment, defense counsel elicited improper testimony that E.Z. had been arrested, as well as details of an offense that "had nothing to do with truthfulness and was not, obviously, a felony." Defense counsel was silent and at no point objected to the court's expressed intention to declare a mistrial.

The court brought the jurors back into the courtroom and discharged them.

## Plea in Bar

Approximately 1 month later, defense counsel filed a plea in bar. Defense counsel alleged that the court's evidentiary ruling was erroneous; therefore, there was no manifest necessity to declare a mistrial.

The State responded that despite having the opportunity, defense counsel did not object to a mistrial. The State also pointed out that defense counsel never offered into evidence E.Z.'s deposition or evidence of E.Z.'s alleged conviction. Further, any "crime" would be an inadmissible juvenile adjudication, as well as "petit larceny," which would not qualify as a crime of dishonesty under Neb. Rev. Stat. § 27-609 (Reissue 2016). Finally, the State asserted the testimony was excludable under Neb. Rev. Stat. § 27-403 (Reissue 2016) and § 27-404.

At the hearing on the plea in bar, defense counsel stated he realized that "the defense never did specifically say we objected to a mistrial at the hearing." Defense counsel explained he still agreed with the prosecutor that the line of questioning was not permitted by § 27-609. But he did not research "the 608 issue" during the time they were given "to research the issues" before the court decided whether to declare a mistrial.

Defense counsel said, "So that's why we didn't specifically object, but we did submit three cases to the case [sic] saying a curative instruction was more proper."

Defense counsel explained that after the mistrial, he conducted more research and concluded that his line of questioning had been proper under § 27-608. Therefore, defense counsel believed there was no manifest necessity for the mistrial.

Defense counsel expressed to the court that the "test really is whether the defendant consents to the mistrial," and "we would submit that the cases we submitted, argument for the curative objection, were, in effect, our objection to the mistrial."

Defense counsel also asserted that E.Z.'s deposition testimony had supported the factual basis for his questioning.

The record does not contain any exhibits. And the record indicates that no exhibits were offered at trial, during the proceedings outside the presence of the jury, or at the hearing on the plea in bar.

### ORDER DENYING PLEA IN BAR

The court denied Leon-Simaj's plea in bar. The court did not address whether Leon-Simaj had consented to the mistrial. Rather, the court concluded that jeopardy was not terminated when improper questioning by defense counsel resulted in unfair prejudice to the State, which could not be cured by a limiting instruction.

The court elaborated that the proper procedure under § 27-609 would have been to simply ask E.Z. if she had been convicted of a felony or a crime of dishonesty. Instead, defense counsel asked questions about an "'arrest'" and "spread details of the alleged crime before the jury."

Moreover, given the age of E.Z., the court stated that "[a]ny 'arrest' or conviction she might have is, in all likelihood, a juvenile adjudication," inadmissible under § 27-609.

Finally, the court explained that to the extent defense counsel was attempting to elicit evidence of prior bad acts in order to show conformity therewith, such evidence was inadmissible and should have been considered during a hearing outside the presence of the jury.

Leon-Simaj appeals the denial of his plea in bar.

## ASSIGNMENTS OF ERROR

Leon-Simaj assigns that the district court erred in (1) determining that defense counsel's question to E.Z. regarding her prior act of burglary was an improper question under § 27-609, without giving regard or analysis to whether the question was proper under § 27-608, both at the mistrial hearing and at the plea in bar hearing, and (2) finding manifest necessity for a mistrial given that there was no violation of the evidence rules.

## STANDARD OF REVIEW

[1,2] Issues regarding the grant or denial of a plea in bar are questions of law.[2] On a question of law, an appellate court reaches a conclusion independent of the court below.[3]

## ANALYSIS

[3] The issue in this appeal is whether retrial of Leon-Simaj, after his first trial ended in a mistrial, would violate his Fifth Amendment right not to be placed twice in jeopardy. The Double Jeopardy Clause of the U.S. Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."[4] The Double Jeopardy Clauses of both the federal and Nebraska Constitutions protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.[5]

Underlying this constitutional safeguard is the belief that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him

---

[2] *State v. Bedolla*, 298 Neb. 736, 905 N.W.2d 629 (2018).

[3] *Id.*

[4] U.S. Const. amend. V. Accord Neb. Const. art. I, § 12.

[5] *State v. Lavalleur*, 298 Neb. 237, 903 N.W.2d 464 (2017).

to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."[6]
In addition, the defendant has a right to have his trial completed by a particular tribunal.[7]

On the other hand, "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused."[8] "[I]t is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense."[9]

[4] Society, for its part, has a strong interest in giving the prosecution one complete opportunity to convict those who have violated its laws.[10] And a criminal trial is, "even in the best of circumstances, a complicated affair to manage."[11] Thus, "a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide."[12] When the defendant objects to the declaration of a mistrial, the defendant's right to have a trial completed by a particular tribunal will be subordinated to the public's interest in fair trials

---

[6] *United States v. Dinitz*, 424 U.S. 600, 606, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976).

[7] See *id.*

[8] *Arizona v. Washington*, 434 U.S. 497, 505, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978).

[9] *United States v. Jorn*, 400 U.S. 470, 483-84, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). See, also, e.g., *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982).

[10] See *Arizona v. Washington, supra* note 8.

[11] *United States v. Jorn, supra* note 9, 400 U.S. at 479.

[12] *Id.*, 400 U.S. at 480.

ending in just judgments, when there was a manifest necessity for a mistrial.[13]

[5] But the analysis is different when a mistrial was granted at the defendant's request or with the defendant's consent. Where "the defendant himself has elected to terminate the proceedings against him . . . the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause."[14] When a mistrial is declared at the defendant's request or with the defendant's consent, reprosecution is barred only when the prosecution's conduct was intended to provoke the defendant into moving for or consenting to the mistrial.[15]

The U.S. Supreme Court has also rejected any contention that the defendant's consent to a mistrial depends on demonstrating a knowing, voluntary, and intelligent waiver of the right to be free from double jeopardy.[16] Rather, a mistrial "at the defendant's request or with his consent is wholly consistent with the protections of the Double Jeopardy Clause."[17]

[6] The important consideration for purposes of the Double Jeopardy Clause, the U.S. Supreme Court has said, is that the defendant retains primary control over the course to be followed in the event of an error.[18] The defendant retains primary control when he or she exercises the option whether or not to take the case from the jury, when circumstances occur that may be thought to warrant a declaration of a mistrial.[19]

---

[13] See, e.g., *id.*; *State v. Todd*, 296 Neb. 424, 894 N.W.2d 255 (2017). Compare *Gori v. United States*, 367 U.S. 364, 81 S. Ct. 1523, 6 L. Ed. 2d 901 (1961).

[14] *Oregon v. Kennedy, supra* note 9, 456 U.S. at 672.

[15] See, *Oregon v. Kennedy, supra* note 9; *Camden v. Circuit Court of Second Judicial Circuit*, 892 F.2d 610 (7th Cir. 1989); *State v. Bedolla, supra* note 2.

[16] See *United States v. Dinitz, supra* note 6.

[17] *Id.*, 424 U.S. at 608.

[18] *United States v. Dinitz, supra* note 6.

[19] *United States v. Jorn, supra* note 9.

The U.S. Supreme Court has illustrated that a defendant may conclude, for instance, that a mistrial would result in less anxiety, expense, and delay than a potential retrial after a protracted appeal process if the tainted proceedings continued.[20] If the defendant chooses to request or consent to a mistrial, it would defeat the defendant's right of primary control to reject a mistrial motion on the grounds that it was not required by manifest necessity.[21]

Consent arises most often when the trial court, as here, sua sponte declares a mistrial.[22] While the U.S. Supreme Court has yet to squarely address the issue, courts generally agree that implied consent, just like express consent, removes any double jeopardy bar to a retrial.[23]

Courts articulate different standards for determining when a defendant has implicitly consented to a mistrial. The majority of courts addressing the issue, both federal[24] and state,[25] have held that a defendant's failure to object to an expressly contemplated declaration of a mistrial, when the defendant has

---

[20] See *United States v. Dinitz, supra* note 6.

[21] See *id.*

[22] See *Benson v. State*, 111 Nev. 692, 895 P.2d 1323 (1995).

[23] See *U.S. v. You*, 382 F.3d 958 (9th Cir. 2004).

[24] See, *U.S. v. DiPietro*, 936 F.2d 6 (1st Cir. 1991); *Love v. Morton*, 112 F.3d 131 (3d Cir. 1997); *U.S. v. Ham*, 58 F.3d 78 (4th Cir. 1995); *U.S. v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011); *U.S. v. Gilmore*, 454 F.3d 725 (7th Cir. 2006); *United States v. Smith*, 621 F.2d 350 (9th Cir. 1980); *United States v. Puleo*, 817 F.2d 702 (11th Cir. 1987).

[25] See, e.g., *People v. Ortiz*, 196 Colo. 438, 586 P.2d 227 (1978); *Brock v. State*, 955 N.E.2d 195 (Ind. 2011); *People v. Dahlberg*, 355 Ill. App. 3d 308, 823 N.E.2d 649, 291 Ill. Dec. 357 (2005); *State v. Wittsell*, 275 Kan. 442, 66 P.3d 831 (2003); *State v. Carey*, 77 A.3d 471 (Me. 2013); *Pellegrine v. Com.*, 446 Mass. 1004, 844 N.E.2d 608 (2006); *People v. Ackah-Essien*, 311 Mich. App. 13, 874 N.W.2d 172 (2015); *State v. Tolliver*, 839 S.W.2d 296 (Mo. 1992); *Marte v. Berkman*, 16 N.Y.3d 874, 949 N.E.2d 479, 925 N.Y.S.2d 388 (2011); *State v. Ellis*, 200 N.C. 77, 156 S.E. 157 (1930); *State v. Leath*, 461 S.W.3d 73 (Tenn. Crim. App. 2013); *State v. Cram*, 46 P.3d 230 (Utah 2002); *Com. v. Washington*, 263 Va. 298, 559 S.E.2d 636 (2002).

been provided with a sufficient opportunity to object, constitutes consent to the mistrial. The U.S. Supreme Court eluded to this standard in *United States v. Jorn*,[26] when, in concluding that retrial was prohibited by the Double Jeopardy Clause, it noted that the trial judge had acted so abruptly in discharging the jury that there was no opportunity for the defendant to object.

Some of these courts will utilize a totality of the circumstances test to determine whether the defendant consented to a mistrial in the event there was no opportunity to raise a timely objection.[27] Other courts articulate a more general totality of the circumstances test to determine if the defendant has implicitly consented to a mistrial.[28] But many of those courts declaring a totality of the circumstances test hold that the failure to object when given the opportunity to do so weighs heavily in favor of finding consent.[29]

Finally, a minority of courts hold that consent will not be inferred from mere silence in the face of a possible mistrial.[30]

Courts that refuse to imply consent from silence emphasize the importance of the right to have the trial completed by a

---

[26] *United States v. Jorn, supra* note 9.

[27] See, *United States v. Goldstein*, 479 F.2d 1061 (2d Cir. 1973); *U.S. v. Gantley*, 172 F.3d 422 (6th Cir. 1999); *Camden v. Circuit Court of Second Judicial Circuit, supra* note 15.

[28] See, *Glover v. McMackin*, 950 F.2d 1236 (6th Cir. 1991); *Camden v. Circuit Court of Second Judicial Circuit, supra* note 15; *Stanley v. Superior Court*, 206 Cal. App. 4th 265, 141 Cal. Rptr. 3d 675 (2012); *State v. Saunders*, 267 Conn. 363, 838 A.2d 186 (2004); *State v. Stevens*, 126 Idaho 822, 892 P.2d 889 (1995); *Benson v. State, supra* note 22; *Torres v. State*, 614 S.W.2d 436 (Tex. Crim. App. 1981).

[29] See, *Camden v. Circuit Court of Second Judicial Circuit, supra* note 15; *State v. Saunders, supra* note 28. See, also, *Davidson v. U.S.*, 48 A.3d 194 (D.C. 2012); *State v. Stevens, supra* note 28; *Torres v. State, supra* note 28.

[30] See, *State v. Grayson*, 90 So. 2d 710 (Fla. 1956); *Cardine v. Com.*, 283 S.W.3d 641 (Ky. 2009); *People v Hoffman*, 81 Mich. App. 288, 265 N.W.2d 94 (1978); *State v. Bertrand*, 133 N.H. 843, 587 A.2d 1219 (1991); *Com. v. Kelly*, 797 A.2d 925 (Pa. Super. 2002).

particular tribunal.[31] These courts also reason that criminal trials are adversarial and that the State bears the burden; thus, defendants should not be forced to voice an objection and risk "forgoing a win" or "snatching defeat from certain victory" by implicitly consenting to a mistrial that ultimately would not have been supported by manifest necessity.[32]

But we have rejected defendants' use of constitutional shields as swords of gamesmanship.[33] Particularly, we have found that defendants who remain silent in the face of trial error impacting important constitutional rights, and who gamble on a favorable outcome or raise the objection only once the alleged error can no longer be remedied, have waived the error.[34]

[7] We are persuaded by the reasoning underlying the majority rule. Courts holding that defendants implicitly consent when they fail to object, despite the opportunity to do so, point out that "[w]hether the defendant wants a verdict is something he knows best, and when the occasion for choice comes he must choose . . . ."[35] It is fair to expect the defendant to participate in preserving his or her right to have the trial completed by a particular tribunal.[36] And bringing the objection to the court's attention affords the trial court the opportunity to consider the defendant's arguments and prevent any error.[37]

[8,9] Moreover, these courts reason that a defendant who remains silent when the court suggests a mistrial leaves "the false impression of acquiescence even while anticipating a

---

[31] See, e.g., *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976) (citing cases).

[32] *Cardine v. Com., supra* note 30, 283 S.W.3d. at 652.

[33] See *State v. Abdouch*, 230 Neb. 929, 434 N.W.2d 317 (1989).

[34] See, *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011); *State v. Mills*, 199 Neb. 295, 258 N.W.2d 628 (1977).

[35] *United States v. Buljubasic*, 808 F.2d 1260, 1266 (7th Cir. 1987).

[36] See *Davidson v. U.S., supra* note 29.

[37] See *People v. Bean*, 26 Ill. App. 3d 1090, 325 N.E.2d 679 (1975).

subsequent objection."[38] If silence were not construed as consent, attorneys could "lull the court into taking actions that could not later be undone."[39] Requiring the defendant to make an affirmative choice "avoids transforming the protection against double jeopardy into an abusive weapon used by a defendant to avoid prosecution."[40]

What occurred in Leon-Simaj's trial well illustrates the reasons for the majority rule. After the court sustained the State's objection to defense counsel's line of questioning of E.Z., the court gave defense counsel and the State the express opportunity to state their positions as to a possible mistrial. At no point did defense counsel express that he was opposed to the court's declaring a mistrial. Instead, he apologized for his improper line of questioning. And it was the court, not defense counsel, who suggested that the parties present research on the adequacy of a curative instruction.

After a recess, defense counsel still did not return with an objection to the mistrial under consideration. Defense counsel presented cases where curative instructions were adequate, but did not argue that those cases were analogous or that a curative instruction would cure the improper questioning defense counsel admitted had occurred in Leon-Simaj's trial. Even when the State pointed out that "[t]here is a mechanism if the defense wishes to object to a mistrial," defense counsel failed to offer an objection. Finally, when, after hearing the arguments, the court announced its intention to declare a mistrial, defense counsel still remained silent.

Later, at the hearing on the plea in bar, defense counsel argued that double jeopardy barred reprosecution, because the line of questioning he had previously conceded was improper was actually proper. And, while defense counsel admitted he

---

[38] *Marte v. Berkman, supra* note 25, 16 N.Y.3d at 876, 949 N.E.2d at 481, 925 N.Y.S.2d at 390.

[39] *Id.*

[40] *Brock v. State, supra* note 25, 955 N.E.2d at 203.

had not expressly objected to the mistrial, he asserted that his presentation of case law at the court's request should be sufficient to preclude implicit consent.

Intentionally or not, defense counsel had lulled the court into taking action that could not later be undone, only to subsequently attempt to bar reprosecution on the ground that the court erred in concluding the very thing that defense counsel had previously conceded.

[10,11] Even under a totality of the circumstances test, it would appear from these events that defense counsel implicitly consented to the mistrial. But we hold that a totality of the circumstances test is unnecessary when the defendant fails to object to the court's sua sponte consideration of a mistrial, when the court gives defense counsel an opportunity to respond. It is not too onerous to require defense counsel to clearly state whether he or she objects. We hold that where a mistrial is under sua sponte consideration by the court and the defendant is given the opportunity to object, but fails to timely and explicitly do so, that defendant will be held to have impliedly consented to the mistrial, and double jeopardy will not bar a retrial unless the defendant demonstrates such consent was procured through the prosecutorial conduct intended to provoke the defendant into moving for or consenting to a mistrial. Where the defendant has thereby elected to terminate the proceedings against him, the manifest necessity standard has no place in the application of the Double Jeopardy Clause.

[12,13] Although the district court denied the plea in bar on the ground that manifest necessity justified the mistrial, we may affirm on ground different than those expressed below. Where the record adequately demonstrates that the decision of a trial court is correct—although such correctness is based on a ground or reason different from that assigned by the trial court—an appellate court will affirm.[41] Whether the defendant

---

[41] *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017).

consented to a mistrial involves the application of a constitutional principle to historic facts that are reflected in the record.[42] The record reflects that Leon-Simaj was given several opportunities to express his explicit objection to the mistrial under consideration and that he failed to do so. Accordingly, he consented to the mistrial and the district court did not err in denying his plea in bar. Having so concluded, we need not address Leon-Simaj's assignments of error pertaining to whether manifest necessity warranted the mistrial.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

[42] See, *Camden v. Circuit Court of Second Judicial Circuit, supra* note 15; *State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009).