STATE OF NEBRASKA, APPELLEE, v. MILTON HOWARD, APPELLANT.

155 N. W. 2d 339

Filed December 29, 1967. No. 36624.

Joseph L. Krause, for appellant.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an appeal from an order of the district court for Douglas County denying a motion to vacate a conviction and sentence for first degree murder under the provisions of the Post Conviction Act, sections 29-3001 to 29-3004, R. S. Supp., 1965.

The defendant was convicted of first degree murder, a sentence of life imprisonment imposed, and an appeal taken to this court which was affirmed in Howard v. State, 174 Neb. 90, 116 N. W. 2d 7, 375 U. S. 876, 84 S. Ct. 151, 11 L. Ed. 2d 121. The facts are recited in that case and they will not be repeated here except as necessary in disposing of the present appeal. The evidence discloses and the jury found that the defendant procured Jerry Erving and Donald Williams to kill one Edward Ellis. In carrying out the killing, Dorothy Elliott was also killed, she being the companion of Ellis at the time of the murders. Defendant, Erving, and Williams are

serving life sentences for the crime. It is contended here that defendant Howard was deprived of his constitutional rights, requiring that he be granted a new trial.

On November 3, 1965, defendant filed a motion to vacate and set aside defendant's sentence and for the release and discharge of defendant or, in the alternative, to grant him a new trial. Counsel who drafted the motion was, on November 26, 1965, appointed by the court to represent the defendant. On December 3, 1965, the trial court issued an order to the county attorney to show cause why an evidentiary hearing should not be had. After a hearing, the court found that many of the allegations raised no issue under the Post Conviction Act for the reason that they were or should have been raised in the direct appeal from his conviction, or related to periods of time disconnected from the present case, or related to matters involving no constitutional rights. We find no error in this ruling. The trial court did find that an evidentiary hearing should be granted to determine the merits of certain contentions advanced by the defendant which might involve a violation of his constitutional rights. The evidentiary hearing commenced on July 28, 1966, and was completed at a session of court commencing on September 29, 1966. On January 13, 1967, the trial court entered its order with extensive and comprehensive findings denying relief under the Post Conviction Act.

It is contended that the changing of Supreme Court Rule 7(d) on June 2, 1961, to permit the trial court to certify the bill of exceptions in the original trial on the death of the official court reporter, constituted an ex post facto law and denied the defendant due process of law under applicable provisions of the state and federal Constitutions. The evidence shows that shortly after the trial and conviction of the defendant the official court reporter died. Under the existing rules of this court, the transcript of the evidence was required to be certified by the official court reporter, but no provision was made

to cover the contingency of his inability to prepare and certify the bill. This court amended the rule to provide that in such cases the bill of exceptions should be prepared under the supervision of and be certified by the trial judge. It is this amendment of the rule that the defendant contends is ex post facto as to him and deprived him of a constitutional right. The record shows that defendant's counsel was given every opportunity by the trial court to offer amendments to the bill and to object to any misstatements of the evidence in the proposed bill before it was certified by the trial court. Defendant did not avail himself of this opportunity. The trial court, after a hearing, found that the proposed bill fairly, accurately, and truly reflected the testimony of the witnesses, the objections of counsel, and the rulings of the court. The trial court thereupon certified the bill in accordance with the amendment, Rule 7d2 of the Rules of the Supreme Court. The court's finding and subsequent certification of the bill thereupon became final and conclusive.

The question before us involves a question of procedure. It is a general rule that questions of procedure involving no substantial right are not ex post facto laws within the meaning of the Constitution. Watts v. State, 229 Ind. 80, 95 N. E. 2d 570. Alterations of a law or rule which do not make a criminal act of that which was not criminal when done, which do not aggravate an offense or change the punishment and make it greater than when committed, which do not alter the rules of evidence by requiring less or different evidence than required at the time of the commission of the offense, and which do not deprive the accused of any substantial right or immunity possessed by him at the time of the commission of the criminal act charged, are not ex post facto within the meaning of the Constitution. Kring v. Missouri, 107 U. S. 221, 2 S. Ct. 443, 27 L. Ed. 506. The contention that the defendant was deprived of a constitutional right by the manner in which the transcript

of the evidence was prepared and certified on the appeal from defendant's conviction for first degree murder is without merit.

Defendant assigns as error the finding of the trial court that perjured testimony was not knowingly used by the State in procuring the conviction of the defendant for first degree murder. Counsel for the defendant appears to assume that the recantation of the evidence of an accomplice who testified for the State is ipso facto sufficient to require a new trial. While such a result is not necessarily true, such a situation requires a consideration of the evidence and surrounding circumstances.

In December 1959, the defendant Howard was arrested and charged in the district court of the United States with the sale of narcotics. His preliminary hearing was set for December 28, 1959. One Edward Ellis was to have been a witness for the government against Howard. On December 27, 1959, Ellis and Dorothy Elliott were found murdered in the Ellis apartment. Donald Williams and Jerry Erving were implicated and Williams confessed that he and Erving had committed the murder at the instigation of Howard and the agreement to pay $1,000 to them by Howard. Williams testified for the State against Howard. In due time, Howard, Williams, and Erving were convicted of first degree murder and the three are serving life sentences for the murders. Subsequently, Williams recanted his testimony. He now says that he alone murdered Ellis and Elliott, that Howard had nothing to do with the murders, and that he was coerced by two assistant county attorneys into giving the perjured testimony. The two assistant county attorneys testified that Williams' confession was wholly voluntary, that they checked out his confession with several known facts and found it to be consistent with them, and that the charge of coercion by them is without foundation and wholly false.

The evidence shows that Williams and Erving were addicted to the use of narcotics and had been engaged

with Howard in their unlawful sale. Williams' testimony at the trial of Howard and Erving for murder showed Howard's motive for the murder of Ellis was to eliminate him as a witness against him in the federal court on the narcotics charge. The evidence of Williams that Howard was willing to pay $1,000 for the elimination of Ellis did not stand alone. Another witness, Rudolph Williams, no relation to and not to be confused with Donald Williams, testified to overhearing a conversation between the defendant and a person later charged as an accomplice in which the name of Ellis and $1,000 were linked together. This evidence was not contradicted.

It is the knowing use of false testimony or the permitting of false testimony to stand when the prosecution knows the same to be false that is condemned. Otherwise, recantation testimony is admissible only to impeach the credibility of the witness. Fugate v. State, 169 Neb. 434, 99 N. W. 2d 874, 363 U. S. 851, 80 S. Ct. 1631, 4 L. Ed. 2d 1733. The contention that the evidence of Donald Williams given on the murder trial of Howard was false is based solely on his own statement that it was coerced by two assistant county attorneys and known to be false by them. This was flatly denied by them and raises a question of credibility for the court. We point out that Donald Williams when first interrogated denied any connection with the deaths of Ellis and Elliott. Subsequently he admitted the perpetration of the murders and implicated Erving and Howard. On the trial, under oath, he reiterated the facts showing the guilt of Howard, Erving, and himself. Subsequently, when all were confined at the same place of imprisonment, when additional punishment could not be assessed, when associated with those with whom he had collaborated in violating the law and against whom he had testified, and, finally, having little respect for the integrity imposed by an oath, the determination of his credibility when weighed against that of two reputable

members of the bar in the service of the state, affords an appropriate basis for a finding, first, that his evidence on the trial was voluntary and not procured by coercion and threat, and, second, that he is not worthy of belief in the absence of corroboration. The language of Bute v. Illinois, 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986, cited in Hawk v. State, 151 Neb. 717, 39 N. W. 2d 561, 339 U. S. 923, 70 S. Ct. 612, 94 L. Ed. 1346, seems applicable here: " 'Doubts should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the State's attorney. They were state officials lawfully chosen to discharge serious public responsibilities under their oaths of office.' " The defendant has failed to carry the burden of proof in establishing that the prosecution knowingly used false evidence procured by coercion in securing the conviction of Howard, and, we think, the defendant has failed to establish the falsity of his evidence given on defendant's trial for murder. The trial court had ample evidence before it to sustain its finding that the recantation of Williams was false, under the circumstances shown, and that defendant failed to establish by a preponderance of the evidence that any constitutional right of the defendant was infringed.

The defendant contends that his constitutional rights were violated because of the use of statements during the trial that were unconstitutionally obtained. The evidence shows that Jack Fitch, a court reporter, was called by the State as a rebuttal witness for the purpose of impeaching the defendant. The defendant was asked on cross-examination if he had not made inconsistent statements in a specified interview in the county jail which he denied. Fitch, who had reported the interview, was called and testified to the statements made by the defendant at that time. Defendant asserts that these statements were unconstitutionally obtained and that their use for impeachment purposes was a violation of his constitutional rights. Fitch testified that at the

time of taking the statement, the defendant did not have a lawyer representing him, he was not asked about a lawyer, and that no one advised defendant of his constitutional rights. The record shows, however, that no objection was made to the testimony elicited from Fitch. It was not assigned as error in the motion for a new trial nor was it assigned as error in this court on appeal from the murder conviction. The error, if any, was under these circumstances clearly waived and is not available to the defendant in a post conviction action. A party will not be permitted to withhold objection to incompetent evidence and take his chances on a favorable verdict and, when the verdict is adverse, be permitted to raise it for the first time and assert it as a basis for a new trial. In United States v. Curry, 358 F. 2d 904, the court said: "Defense may not remain silent in hopes that trial court will fall into reversible error where possible error could have been passed upon and cured, if need be, by a properly timed objection." In any event, the evidence of Fitch was an impeachment of the defendant on a collateral matter not ultimately involved in the issue of guilt and was not erroneous under the holdings of Walder v. United States, 347 U. S. 62, 74 S. Ct. 354, 98 L. Ed. 503, and United States v. Curry, *supra.* In the Walder case, the court said: "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment." In the Curry case, the court said: "Thus the government may not make any use of evidence which has been suppressed in order to make out a case which is strong enough to have the jury pass upon guilt or innocence. And, likewise, the defendant's denial of the elements of the crime may not be disputed

by evidence which is the fruit of illegal action. See Agnello v. United States, supra. But once the government has presented a prima facie case without using such evidence, it may use the suppressed evidence to challenge the truth and reliability of the defendant's assertions as to collateral matters." In addition to the foregoing, we point out that Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, and Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974, are not retroactive by their own terms and are inapplicable to the instant case which was tried in May 1960.

We have examined other assignments of error set out in the defendant's brief. They were fully considered by the trial court and its findings of fact and conclusions of law correctly dispose of each of the contentions advanced. The contention of defendant that he has not been afforded due process of law has no basis in fact or law and, as the trial court found after a comprehensive review of the law and facts, it is wholly without merit. We have found no error in the record and the judgment of the trial court is affirmed.

AFFIRMED.