STATE OF NEBRASKA, APPELLEE, v. WELDON ROSS, APPELLANT.

APPELLANT.

183 N. W. 2d 229

Filed January 22, 1971. No. 37533.

A. Q. Wolf, Bennett G. Hornstein, and James R. Welsh. for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The question involved in this case is whether a defendant, who voluntarily takes the witness stand in his own behalf, may be impeached on cross-examination or rebuttal testimony by previous statements taken from the defendant unless all of the Miranda warnings have been given. The sole ground of this appeal is the admission of such testimony by the district court. We affirm the judgment and sentence of the district court.

The defendant was prosecuted for burglary. Two police officers arrived at a grocery store at 2008 North Twenty-fourth Street in Omaha, Nebraska, about 3 a.m. on July 15, 1969, in response to an electronic A.D.T. alarm. Upon opening the door of a large incinerator in the northwest corner of the grocery building the officers discovered the defendant inside. An examination of the door at the rear of the building revealed several pry marks. Several pieces of scrap metal resembling crow or pry bars were lying near the door of the store and could have been used to make the pry marks which the officers found. Other evidence pointing to and establishing the guilt of the accused will not be repeated here as it is not pertinent to the issue involved in this case. No issue is raised as to the sufficiency of the evidence.

The defendant took the stand voluntarily and related that on July 15, 1969, he was unemployed and on parole from the Kearney (Boys' Training School). One of his parole restrictions was a midnight curfew. He testified that at about 2:30 a.m. on the night in question while at his girl friend's home, Miss Washington, he realized that he had violated his parole curfew and decided to leave. After leaving, he proceeded to the Twenty-fourth Street area to search for pop bottles which could be redeemed for cigarette money at a nearby service station. He testified that while looking for pop bottles he climbed inside the grocery store's incinerator to determine whether any pop bottles could be found there, and during this time a policeman came to the incinerator and told him to get out. He denied any attempt to break into the store. His statement was entirely exculpatory in nature.

In rebuttal, the State called an Omaha police officer. The officer related that the defendant had been questioned by him in the detective bureau at police headquarters. In recalling the constitutional rights admonitions given defendant before the interrogation, the officer failed to mention the warning that anything the defendant might say could be used as evidence against him in court. This officer then related, over objection, the substance of the defendant's statement, which was similar to the exculpatory testimony he had previously given, with the significant variation that just prior to searching for the pop bottles he had been at his *own home* where he was unable to sleep because of the hot weather.

The precise question presented in this case is whether this earlier exculpatory statement could be used to impeach his testimony on the witness stand as to a matter collateral to the issue of guilt. In all statements he denied participation in or commission of the crime charged. In both his testimony and previous statements he admitted being in the incinerator and searching for pop bottles at 3 o'clock in the morning.

It should be pointed out that nowhere in the record

or in the defendant's argument in this court does he allege or suggest that the exculpatory statements he made were not voluntary or that coercion, force, or fear were involved in the giving of the statements. Where the defendant was prior to the aborted burglary attempt was irrelevant to the issue of his guilt or innocence. The defendant did bring the explanatory statement of his prior conduct into the trial on direct testimony. He now complains when his truthfulness is legally attacked by the interdiction of an inconsistent statement as to where he was prior to the time of the incident in question.

Illegally obtained evidence is admissible for impeachment purposes as to a collateral matter. Walder v. United States, 347 U. S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954); State v. Howard, 182 Neb. 411, 155 N. W. 2d 399 (1967); Tate v. United States, 283 F. 2d 377 (1960); People v. Kulis, 18 N. Y. 2d 318, 221 N. E. 2d 541 (1966); People v. Harris, 25 N. Y. 2d 175, 250 N. E. 2d 349 (1969); People v. Boodie, 26 N. Y. 2d 779, 257 N. E. 2d 657 (1970); State v. Catrett, 5 N. C. App. 722, 169 S. E. 2d 248 (1969); State v Butler, 19 Ohio St. 2d 55, 249 N. E. 2d 818 (1969); People v. Marsh, 14 Mich. App. 518, 165 N. W. 2d 853 (1968). The controlling authority for the admissibility of this evidence is Walder v. United States, *supra*. It will be observed that the facts in the Walder case were much stronger in support of the defendant's position than in the case at bar. In Walder the defendant was charged in 1950 with purchasing and possessing heroin. He moved to suppress the seized heroin because the government came by it as a result of an unlawful search and seizure. The motion was sustained and thereafter the government dismissed the charges. Approximately 1½ years later Walder was arrested on other narcotics charges, none of which were related to the 1950 charge. During the trial Walder took the stand and testified in effect that he had never possessed any narcotics at any time in his life. On cross-examination and over his objection, he was asked about the 1950 heroin capsule that had been

suppressed in the former proceeding and was illegally obtained. Walder denied any narcotics were taken from him in 1950. The government rebutted this with the testimony of one of the officers who unlawfully seized heroin from Walder in 1950. The sole purpose of this evidence, under the court's instruction and as a basis for admissibility, was to impeach Walder's credibility. The Supreme Court of the United States in Walder (speaking through Justice Frankfurter) approved the admission of this testimony: "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.

"Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." Directly in point is the case of Tate v. United States, *supra*. There the Circuit Court of Appeals for the District of Columbia sustained the admissibility of an impeaching statement of the same nature similar to the one presented in this case. The court said, speaking through Judge Burger, now Chief Justice of the United States Supreme Court:

"In the instant case, it is plain that the court did not admit any statement which was per se inculpatory. None of the acts described in the challenged statements, in and of themselves, constituted 'elements of the case against him.' The statements, even if true and believed by the jury, described lawful proper acts in which appellant as well as his companions were free to engage.

"* * * The statement on rebuttal was not inherently more incriminatory than the statement on direct; it was simply a different story but significantly different so far as his credibility was concerned. Appellant had a right to explain, as he did on direct examination, why and how he happened to be where he was found and arrested with stolen property in his possession. But when he gave one story to the police and another in court, and neither story covered any act which was per se inculpatory, the jury was entitled to hear both versions.

"The weight to be given to this impeaching testimony was for the jury; if the jury accepted the officer's testimony as true, that would tend to cast some doubt on appellant's veracity. In this sense the impeaching testimony had an adverse impact on the defense. But the Supreme Court in Walder did not suggest that impeaching evidence is to be excluded because it is damaging; there is little point for prosecutors to offer, or courts to allow, impeaching evidence unless it has some relevance to credibility. We note however that the evidence allowed in Walder was vastly more damaging than the impeachment evidence here. * * *

"We have considered whether the use of such admissions exerts undesirable influence on an accused to refrain from testifying in his own defense. We think it does not. The accused is still free to take the stand and truthfully deny all elements of the crime. Once he goes beyond denial of the crime itself and testifies as to collateral matters he is under an added compulsion to tell the truth. He may also have an added burden to provide a convincing explanation for any substantial inconsist-

encies which may be shown between his statement on the stand and contrary statements previously made; of course this is by no means confined to statements made to police or while in custody. Various statements made prior to his direct testimony might be available to impeach what he says in court, whether made before or after arrest and whether to police, friends or strangers. If impeached on a pheripheral non-inculpatory matter, he is of course free to explain the inconsistency, if indeed there is a rational 'human error' explanation for the inconsistency. What is proscribed by Walder is the freedom to 'resort to perjurious testimony' on the assumption that prior inconsistent statements would be kept from the jury. Neither sound public policy nor the ends of justice in the particular case would be served by a different rule. Whatever inhibition arises out of our view of the law it is not against testifying, but against testifying falsely."

The entire argument of the defendant is based upon dicta in Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974 (1966). The Walder case has never been overruled by the United States Supreme Court and remains the applicable law to the case here within the constitutional context. Miranda, of course, involved the use of an inculpatory statement and the admissibility of evidence to affirmatively establish guilt by an inculpatory statement. It did not pass on the question we have in this case or which was present in Walder. A close examination of the cases cited by the defendant reveals that they are based upon an anticipatory analysis of what the Supreme Court of the United States would hold in the event that the precise question was presented to it. The opposite conclusion has been reached in the following cases: State v. Howard, *supra;* Tate v. United States, *supra;* People v. Kulis, *supra;* People v. Harris, *supra;* People v. Boodie, *supra;* State v. Catrett, *supra;* State v. Butler, *supra;* People v. Marsh, *supra.* In State v. Howard, *supra,* this court quoted with

approval part of the quotation from the Walder case that we have herein quoted. In People v. Harris, *supra*, the court of last resort in New York said as follows: "The first concerns a statement obtained from him after his arrest and under circumstances which concededly violated the requirements prescribed by the Supreme Court in Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. In its direct case, the People did not offer the statement in evidence. On cross-examination, however, and over the defendant's objection, the statement was employed extensively by the prosecutor in cross-examining the defendant who had taken the witness stand in his own defense. The statement was at complete variance with the account given by the defendant on direct examination although *it was no more inculpatory than his direct testimony*. Such use of the statement for purposes of impeachment is authorized by our decision in People v. Kulis, 18 N. Y. 2d 318, 274 N. Y. S. 2d 873, 221 N. E. 2d 541, to which we adhere." (Emphasis supplied.) The Kulis and Boodie cases cited *supra* have since followed and applied the Walder rule, again subsequent to Miranda. We think the conclusion of the North Carolina court in State v. Catrett, 5 N. C. App. 722, 169 S. E. 2d 248 (1969), is applicable here. The North Carolina court said as follows: "We do not think the challenged evidence falls within the condemnation of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, where a signed confession was introduced as substantive evidence against the defendant. On the contrary, we think the principle declared in Walder v. United States, 347 U. S. 62, 74 S. Ct. 354, 98 L. Ed. 503, is applicable."

We agree with the reasoning of the Supreme Court of Ohio in State v. Butler, 19 Ohio St. 2d 55, 249 N. E. 2d 818 (1969), which held that the dictum of Miranda did not overrule the controlling opinion of Walder but that Walder in fact controlled. After discussion of dictum by Chief Justice Marshall in Cohens v. Virginia,

19 U. S. (6 Wheat.) 264, 399, 5 L. Ed. 257 (1821), the Ohio court concluded: "The court, in Miranda, was not faced with the facts of this case. Thus, we do not consider ourselves bound by the dictum of Miranda." In conclusion we feel that the rule of Miranda dealt with the affirmative use of confessions for the purpose of providing probative facts to establish the essential elements of the crime of which the defendant is charged. We have so held in several cases.

As controversial as the scope of the Miranda holding may be, it cannot be disputed that the reasoning of the Miranda case is grounded upon the proposition set forth in the Fifth Amendment to the Constitution of the United States—that no man shall be *compelled* to give incriminating evidence against himself. A barring of the affirmative use of a statement to establish guilt in violation of the Miranda requirements, but otherwise voluntary, is a prophylactic rule of exclusion designed to prevent the introduction of statements by the defendant which tend to establish his confession of guilt or his guilty acts as a matter of fact. It seems to us that the introduction of statements made by a defendant collateral to the issue of guilt and by way of impeachment to test the credibility of his story of his innocence serves no such purpose.

There is nothing in the Fifth Amendment, as we see it, that gives a defendant in a criminal case the right to lie with impunity. He cannot be forced to take the stand but once he does he ought to be subjected to cross-examination as any other witness. As to contradictory exculpatory statements on collateral matters, why should the jury not know this in evaluating the important issue of credibility? As we have noted there is no issue in this case as to the voluntariness of the exculpatory statement given to the police officer and sought to be used for impeachment purposes.

Ignoring the controversial contention that Miranda flays the blundering constable by freeing the felon (Jus-

tice Cardozo's famous dictum in People v. Defore, 242 N. Y. 13, 150 N. E. 585 (1926)), we feel that a striking of the balance between the interest of society and the rights of a defendant in our adversary trial system require a holding that testimony of the nature in issue here be admissible. The function of criminal court proceedings in our history has been a search for the truth and an honest endeavor to find out if the accused is guilty or innocent. A rigid formula developed by an anticipatory and enthusiastic expansion of the Miranda holding which would provide a defendant the means by which he could use the government's illegally obtained evidence as a shield against his own untruths and false testimony is not permissible.

The judgment of the district court is correct and is affirmed.

AFFIRMED.