Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/09/2022 09:05 AM CST

State of Nebraska, appellant,
v. Tracy L. Space, appellee.

___ N.W.2d ___

Filed September 16, 2022.    No. S-21-837.

1. **Judgments: Speedy Trial: Appeal and Error.** Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Speedy Trial.** Under Nebraska's speedy trial statutes, criminal defendants must be brought to trial by a 6-month deadline, but certain periods of delay are excluded and thus can extend the deadline.

4. ____. The primary burden is on the State to bring an accused person to trial within the time provided by law.

5. ____. If a defendant is not brought to trial by the 6-month speedy trial deadline, as extended by any excluded periods, he or she is entitled to absolute discharge from the offense charged and for any other offense required by law to be joined with that offense.

6. **Speedy Trial: Proof.** When a motion for absolute discharge is filed, the State bears the burden to show, by the greater weight of the evidence, that one or more of the excluded time periods under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016) are applicable.

7. **Speedy Trial.** To calculate the time for speedy trial purposes, a court must exclude the day the complaint was filed, count forward 6 months, back up 1 day, and then add any time excluded under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016) to determine the last day the defendant can be tried.

8. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning. A court will not read meaning

into a statute that is not warranted by the legislative language or read anything plain, direct, or unambiguous out of a statute.

9. **Statutes: Intent.** When interpreting a statute, a court must give effect, if possible, to all the several parts of a statute and no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.

10. **Words and Phrases.** A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.

11. **Statutes: Words and Phrases.** When legal terms of art are used in statutes, they are to be construed according to their term of art meaning.

12. **Speedy Trial: Words and Phrases.** The term "continuance," as used in Neb. Rev. Stat. § 29-1207(4)(b) (Reissue 2016), refers to the circumstance where a court proceeding set for one date is postponed to a future date.

13. **Speedy Trial.** The text of Neb. Rev. Stat. § 29-1207(4)(b) (Reissue 2016) plainly requires that a "continuance" must be granted at the request or with the consent of the defendant or his or her counsel, before the resulting period of delay is excludable.

14. **Criminal Law: Appeal and Error.** Under the invited error doctrine, a defendant in a criminal case may not take advantage of an alleged error which the defendant invited the trial court to commit.

15. **Criminal Law: Speedy Trial: Waiver.** A criminal defendant's failure to demand a trial within the 6-month statutory speedy trial period, or to object to a trial date set beyond such period, does not constitute a waiver of his or her speedy trial rights.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Exception overruled.

Shawn R. Eatherton, Buffalo County Attorney, and Kari R. Fisk for appellant.

Lydia Davis, Buffalo County Public Defender, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

During a scheduling hearing in a felony criminal case, the district court proposed a trial date and asked defense counsel, "does that work?" to which counsel replied, "Yes, thank you."

The court then scheduled trial for that date. No one mentioned speedy trial during the scheduling hearing, but it is undisputed that the proposed trial date was more than 6 months after the date the information was filed.

Shortly before the scheduled trial date, the defendant moved for absolute discharge, asserting she had not been brought to trial before the running of the 6-month speedy trial period under Neb. Rev. Stat. § 29-1207 (Reissue 2016). The district court granted absolute discharge, and the State filed this exception proceeding.

The State's primary argument is that by agreeing to an initial trial date that was outside the 6-month statutory speedy trial period, the defendant consented to an excludable "period of delay resulting from a continuance granted" within the meaning of § 29-1207(4)(b). Alternatively, the State argues the defendant "invit[ed] the Court to commit error in scheduling"[1] and should not have been allowed to rely on such error to obtain absolute discharge. Finding no merit to the State's arguments, we overrule the exception.

BACKGROUND

In a two-count information filed on March 5, 2021, Tracy L. Space was charged with aggravated driving under the influence, third offense (a Class IIIA felony), and refusal to submit to a preliminary breath test (a Class V misdemeanor). On March 9, Space filed a motion for discovery, which the court granted in an order entered the following day.

On March 25, 2021, the court entered a progression order setting arraignment for May 24, and a "final plea hearing" for July 22. The progression order stated that "[a]t the conclusion of the final plea hearing . . . the Court will schedule trial." Before the scheduled arraignment on May 24, Space filed a written waiver of arraignment and entered a plea of not guilty.

All parties appeared for the final plea hearing on July 22, 2021, during which the following exchange took place:

---

[1] Brief for appellant at 8.

THE COURT: . . . We are set for final plea/pretrial. [Defense counsel], what is the status?

[Defense counsel:] She is asking — she's standing on her not guilty plea, Your Honor.

THE COURT: September 20, 2021, for jury trial; does that work?

[Defense counsel:] Yes. Thank you.

THE COURT: We'll set the matter also for final status hearing the Friday before, September 17th at 11:30 a.m. Does that also work?

[Defense counsel:] Yes. Thank you.

THE COURT: Ms. Space, we're going to set your matter for jury trial on September 20, 2021, at 9 a.m., and also for a final status hearing the Friday before, September 17th at 11:30 a.m. It's important that you be here on both times; do you agree to do that?

DEFENDANT: Yes, Your Honor.

THE COURT: [Defense counsel], I'll ask that you write those dates and times down for Ms. Space so she doesn't forget.

Ms. Space, you need to understand that today was the deadline for discovery and also the deadline to [accept any] plea offers that may be made by the State. Absent a showing of good cause, the matter will proceed to trial at your request; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: The Court will allow you to remain out on your current bond, subject to all the terms and conditions; do you understand?

DEFENDANT: Yes, Your Honor.

THE COURT: And do you have any questions for me?

DEFENDANT: No, Your Honor.

THE COURT: [Defense counsel], anything else?

[Defense counsel:] No. Thank you.

THE COURT: [Counsel for the State]?

[Counsel for the State:] No, Your Honor.

The issue of speedy trial was not raised or discussed when the trial date was selected, nor at any other point during the final plea hearing. After the hearing, the court entered an order, styled as a journal entry, memorializing the dates set for the final status hearing and trial.

On September 13, 2021, Space filed a motion for absolute discharge, asserting a violation of both her statutory and constitutional speedy trial rights. At the hearing on Space's motion, the court took judicial notice of the information, the progression order, Space's written not guilty plea, the journal entry memorializing the trial date, and the remainder of the court file. The State offered a transcript of the July 22 hearing into evidence, which the court received without objection.

The court then gave counsel an opportunity to present argument, beginning with the defense. Defense counsel argued that Space was entitled to absolute discharge because the State failed to bring her to trial within 6 months of the date the information was filed and because she had not waived her right to a speedy trial. Anticipating the State's argument, defense counsel urged:

> [I]t is improper . . . to allege that some type of responsibility was on the defendant because that's simply not the case. It's not the defendant's burden to notify the Court of the speedy trial date, and quite frankly, it's not the Court's burden either. According to the law, the duty is on the county attorney, it's on the State, to bring a person to trial, again, within six months of the filing of the trial information.
>
>     . . . I would remind the Court that at no time in this case did Ms. Space ask for a continuance. At the final plea hearing she simply stood on her not guilty plea at that time. I would submit to the Court that that was not a request for a continuance because, quite frankly, it wasn't. There was no evidence that she wasn't immediately ready for trial.

The State urged the court to overrule the motion for discharge, reasoning that Space's acceptance of the September 20, 2021,

trial date rendered the period between the July 22 hearing and September 20 excludable under § 29-1207(4)(b). The State argued:

> A period of delay resulting from a continuance granted at the request or with the consent of the defendant — or of his or her counsel is what the State's relying on here, Your Honor.
>
>     . . . .
>
> So when the Court sets that date and the Court asks [defense counsel] if that's okay, I don't know that it would be appropriate for the State at that point to try to overrule defense counsel in picking that particular date because perhaps there were strategic reasons she would want to have it on [September] 20th. . . .
>
> Regardless of the subjective reasons for why [defense counsel] said [September 20] would work, the objective fact is that the period of time from July 22nd through September 20th, in the State's view, was a mutually agreed upon trial date by and through defense counsel . . . with the consent of defense counsel; and therefore, under [§] 29-1207(4)(b), an excludable period up through September 20th, meaning, then, that the motion for discharge was filed in a time period that the speedy trial clock had not run. So the motion for discharge in the State's view should be overruled, Judge.

The court took the matter under advisement.

Thereafter, the court entered an order granting Space's motion for absolute discharge. It found the 6-month speedy trial period had run on September 6, 2021, and it expressly rejected the State's argument that by agreeing to the September 20 trial date, Space had consented to a "continuance" of trial. It reasoned:

> [T]he cases [the State] referenced all involved requests for a continuance, as opposed to initial trial settings. *See State v. Curry*, 18 Neb. App. 284, 790 N.W.2d 441 (2010); *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). Moreover, the Nebraska Supreme Court addressed

this issue more specifically in *State v. Alvarez*, 189 Neb. 281, 291-92, 202 N.W.2d 604, 610 (1972), wherein it concluded that the "failure by a defendant to demand a trial within the time he is required to be brought to trial . . . or to object at the time trial date is set does not constitute a waiver of his rights[.]" The Court further noted that "[p]revious holdings of this court that failure of the accused to demand trial constitutes a waiver of the statutory right are overruled[.]" *Id.* (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). While the Court further noted that the defendant's inaction may be considered along with other circumstances when determining whether "good cause" exists, it cannot alone constitute good cause. *Id.* No additional evidence of "good cause" was offered in this matter.

Presumably because the motion for absolute discharge was granted on statutory grounds, the court's order did not address Space's constitutional speedy trial claim. The State was granted leave to docket this exception proceeding pursuant to Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2020). We moved the matter to our docket on our own motion.

## ASSIGNMENT OF ERROR

The State assigns that the district court erred in granting Space's motion for absolute discharge.

## STANDARD OF REVIEW

[1,2] Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.[2] But statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

---

[2] *State v. Abernathy*, 310 Neb. 880, 969 N.W.2d 871 (2022).

[3] *State v. Chase*, 310 Neb. 160, 964 N.W.2d 254 (2021).

## ANALYSIS

### Statutory Speedy Trial Principles

[3] The sole question presented is whether the district court erred in granting Space's motion for absolute discharge on statutory speedy trial grounds. The statutory right to a speedy trial is set out in § 29-1207 and Neb. Rev. Stat. § 29-1208 (Reissue 2016).[4] Under these statutes, criminal defendants must be brought to trial by a 6-month deadline, but certain periods of delay are excluded and thus can extend the deadline.[5] The excludable periods are set out in § 29-1207(4)(a) through (f). In this case, the State's primary argument rests on the excludable time period set out in subsection (4)(b) of § 29-1207, which provides:

> (4) The following periods shall be excluded in computing the time for trial:
>
> . . . .
>
> (b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel. . . . A defendant is deemed to have waived his or her right to speedy trial when the period of delay resulting from a continuance granted at the request of the defendant or his or her counsel extends the trial date beyond the statutory six-month period.

[4-6] We have long recognized that the primary burden is on the State to bring an accused person to trial within the time provided by law.[6] If a defendant is not brought to trial by the 6-month speedy trial deadline, as extended by any excluded periods, he or she is entitled to absolute discharge from the offense charged and for any other offense required by law to be joined with that offense.[7] When a motion for absolute discharge is filed, the State bears the burden to show, by the greater

---

[4] See *Abernathy, supra* note 2.

[5] *Id.*

[6] *State v. Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021).

[7] *Abernathy, supra* note 2.

weight of the evidence, that one or more of the excluded time periods under § 29-1207(4) are applicable.[8]

[7] To calculate the time for speedy trial purposes, a court must exclude the day the complaint was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried.[9] In this case, the information was filed March 5, 2021, so absent any excludable time, the State had until September 5, 2021, to bring Space to trial.

The district court found there was 1 excludable day resulting from Space's motion for discovery, which was filed on March 9, 2021, and granted the next day.[10] Accounting for this single excluded day, the court determined the statutory speedy trial period expired on September 6. Space filed her motion for absolute discharge approximately 1 week later, on September 13. After concluding the State had proved no excludable time other than the 1 day related to Space's discovery motion, the district court granted absolute discharge.

In this exception proceeding, the State contends the district court erred by not also excluding the time period from July 22 to September 20, 2021. In doing so, it presents two theories. First, the State suggests that when Space's counsel agreed to the September 20 trial date, the period of time leading up to that date became excludable under § 29-1207(4)(b) as a "period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel." Alternatively, the State argues that by accepting the September 20 trial date, Space "invit[ed] the Court to commit error,"[11] and she should not have been allowed to rely on such

---

[8] See *Coomes, supra* note 6.

[9] *State v. Gnanaprakasam*, 310 Neb. 519, 967 N.W.2d 89 (2021).

[10] See *State v. Washington*, 269 Neb. 728, 695 N.W.2d 438 (2005). See, also, *State v. Covey*, 267 Neb. 210, 217, 673 N.W.2d 208, 213 (2004) (final disposition under § 29-1207(4)(a) occurs on date motion is "'granted or denied'").

[11] Brief for appellant at 8.

error to support absolute discharge. We consider each argument in turn, and ultimately, we reject them both.

### Period of Delay Resulting From Continuance Granted

The State argues that the period between July 22 and September 20, 2021, was excludable under § 29-1207(4)(b) as a "period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel." Space responds that § 29-1207(4)(b) does not apply because this case did not involve the granting of a "continuance," but, rather, involved the initial setting of a trial date. The parties' competing positions present a question of statutory interpretation regarding the meaning of the term "continuance" as used in § 29-1207(4)(b).

Our cases have not expressly defined the term "continuance," presumably because the term is so commonplace in legal vernacular that ordinarily there is no confusion surrounding its meaning. As observed by the Nebraska Court of Appeals, "[I]f it looks like a continuance and sounds like a continuance, it is a continuance."[12] But to analyze whether the State is correct that the period of delay between July 22 and September 20, 2021, resulted from a "continuance," we must first determine the meaning of that term.

According to the State, a "continuance" under § 29-1207(4)(b) means "any delay or postponement of the 6-month statutory period that has been requested by or consented to by the defendant or defense counsel."[13] We disagree with the State's interpretation.

[8,9] Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[14] A court

---

[12] *State v. Craven*, 17 Neb. App. 127, 134, 757 N.W.2d 132, 137 (2008) (rejecting contention that defense counsel's request to "reset" hearing was not request to "continue" hearing within meaning of § 29-1207(4)(b)).

[13] Brief for appellant at 11 (emphasis omitted).

[14] *Nebraska Republican Party v. Shively*, 311 Neb. 160, 971 N.W.2d 128 (2022).

will not read meaning into a statute that is not warranted by the legislative language or read anything plain, direct, or unambiguous out of a statute.[15] When interpreting a statute, a court must give effect, if possible, to all the several parts of a statute and no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.[16]

[10,11] These settled principles guide our analysis, but we also observe that the term "continuance" is a legal term of art. A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.[17] When legal terms of art are used in statutes, they are to be construed according to their term of art meaning.[18]

[12] Black's Law Dictionary defines "continuance" as the "adjournment or postponement of a trial or other proceeding to a future date."[19] This definition is generally consistent with our cases applying the continuance provision found in the first sentence of § 29-1207(4)(b),[20] and such a definition necessarily presumes that before there can be a "continuance" of a proceeding, there must have been an initial setting. Stated differently, "continuance," as it is used in § 29-1207(4)(b),

---

[15] See, *id.*; *State v. Liming*, 306 Neb. 475, 945 N.W.2d 882 (2020).

[16] *State v. Amaya*, 305 Neb. 36, 938 N.W.2d 346 (2020).

[17] *Stone Land & Livestock Co. v. HBE*, 309 Neb. 970, 962 N.W.2d 903 (2021); *State ex rel. Peterson v. Creative Comm. Promotions*, 302 Neb. 606, 924 N.W.2d 664 (2019).

[18] *Id.*

[19] Black's Law Dictionary 400 (11th ed. 2019).

[20] See, e.g., *Coomes, supra* note 6, 309 Neb. at 754, 962 N.W.2d at 516 (finding consent for continuance under § 29-1207(4)(b) when State orally moved to continue matter for further status hearing "'a month down the road,'" and defense counsel said "'Judge, that's fine with me'"); *Liming, supra* note 15 (finding continuance under § 29-1207(4)(b) when State asked to continue court-ordered settlement conference to future date and defendant agreed); *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019) (finding continuance under § 29-1207(4)(b) when defendant moved to continue pretrial hearing to future date).

does not broadly refer to the continuous passage of time. Instead, we hold that "continuance" refers to the circumstance where a court proceeding set for one date is postponed to a future date.

We thus reject the State's invitation to construe § 29-1207(4)(b) to apply to any period of delay granted with the consent of the defendant or defense counsel. The State's construction would effectively read the phrase "continuance granted" out of the statutory text and would allow the trial court to stop the speedy trial clock between court appearances simply by asking whether the next scheduled appearance is agreeable to the defense.

[13] The text of § 29-1207(4)(b) plainly requires that a "continuance" must be granted at the request or with the consent of the defendant or his or her counsel, before the resulting period of delay is excludable. No continuance was granted in this case.

During the July 22, 2021, hearing, defense counsel consented to setting the initial trial date on September 20, but prior to that hearing, there was no scheduled trial date, so counsel was not consenting to a continuance of trial or any other previously scheduled matter. Consequently, the time period between the July 22 hearing and the September 20 trial date was not a "period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel" and was not excludable under § 29-1207(4)(b).

For the sake of completeness, we also reject any suggestion that Space's consent to the initial trial date implicated the waiver provision contained in the last sentence of § 29-1207(4)(b). That sentence provides: "A defendant is deemed to have waived his or her right to speedy trial when the period of delay resulting from a continuance granted at the request of the defendant or his or her counsel extends the trial date beyond the statutory six-month period."[21] Interpreting this language, we have said, "'[I]f a defendant requests a

---

[21] § 29-1207(4)(b).

continuance that moves a trial date which has been set within the statutory 6-month period to a date that is outside the 6-month period, that request constitutes a permanent waiver of the statutory speedy trial right.'"[22] But here, the waiver provision of § 29-1207(4)(b) was inapplicable, because Space consented to an initial trial date set outside the 6-month period; she did not request to continue a trial date that was originally set within the statutory period.[23] There may be a compelling policy argument that a defendant who accepts an initial trial date outside the statutory 6-month period is acting in a way that is fundamentally inconsistent with asserting his or her statutory speedy trial rights and should therefore be understood to have waived these rights. But expanding the statutory waiver provision to address such a scenario is a policy matter properly left to the Legislature.

INVITED ERROR DOCTRINE

[14] The State's alternative argument relies on the invited error doctrine. Under that doctrine, "[a] defendant in a criminal case may not take advantage of an alleged error which the defendant invited the trial court to commit."[24]

The State argues that Space invited the trial court to commit error by agreeing to an initial trial date set outside the 6-month speedy trial period. Space responds that she did not "invite" the court to commit a scheduling error, generally noting it was the judge who proposed the initial trial date, and further noting

---

[22] *State v. Riessland*, 310 Neb. 262, 266-67, 965 N.W.2d 13, 16 (2021), quoting *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014).

[23] See *State v. Gill*, 297 Neb. 852, 901 N.W.2d 679 (2017).

[24] *State v. Gutierrez*, 260 Neb. 1008, 1013, 620 N.W.2d 738, 742 (2001). See, also, *State v. Brock*, 245 Neb. 315, 318, 512 N.W.2d 389, 391 (1994) ("[w]e decide this case on the basis that a defendant in a criminal case may not take advantage of an alleged error which defendant invited the court to commit"); *State v. Zima*, 237 Neb. 952, 956, 468 N.W.2d 377, 380 (1991) ("[i]t is a well-established principle of appellate practice that a party cannot complain of error which he or she invited the trial court to commit").

the defendant has no duty to object on speedy trial grounds when the court sets a trial date outside the 6-month speedy trial period.[25]

We find no merit to the State's suggestion that the doctrine of invited error should have either estopped Space from moving for absolute discharge or precluded the court from granting absolute discharge. As an initial matter, we question whether the invited error issue is properly before us, as it is not clear the issue was expressly presented to and considered by the district court.[26] But even assuming the issue of invited error was properly preserved for appellate review, we are not persuaded it has any application in this case.

First, it is debatable what role, if any, principles like the invited error doctrine should play in our statutory speedy trial analysis. The statutory scheme mandated by the Legislature establishes when the speedy trial period begins to run, how that period is to be computed, which periods of delay are excludable, when a defendant is entitled to absolute discharge, and when a defendant is deemed to have waived the statutory right to speedy trial. This statutory scheme contains no provision permitting excludable time to arise as a result of invited error, nor does it contain any provision forbidding a defendant from moving for absolute discharge if that defendant has "invited" a speedy trial violation. And because it is not the proper role of the courts to modify the statutory speedy trial scheme through judicial construction,[27] we question the

---

[25] See *State v. Alvarez*, 189 Neb. 281, 202 N.W.2d 604 (1972).

[26] See *State v. Thomas*, 303 Neb. 964, 982, 932 N.W.2d 713, 727 (2019) ("[a]n appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court").

[27] See *State v. Kinstler*, 207 Neb. 386, 299 N.W.2d 182 (1980) (explaining that courts have no discretion to ignore provisions in §§ 29-1207 and 29-1208). See, also, *State v. Williams*, 277 Neb. 133, 139, 761 N.W.2d 514, 521 (2009) (recognizing courts will not "change the law because of what the State perceives as abuse by criminal defendants" in speedy trial context); *Williams, supra* note 27 (Wright, J., concurring) (fixing flaws in statutory speedy trial scheme is proper task for Legislature, not courts).

propriety of using the invited error doctrine to circumvent
the absolute discharge and waiver provisions established by
the Legislature.

But this case does not require us to decide whether the
invited error doctrine could ever apply to prevent absolute
discharge under the speedy trial statutes. Because even if the
doctrine could be used as the State suggests, this record would
not support a finding that Space "invited" the court to commit
error in setting the trial date.

At the final plea hearing, Space's counsel advised the court
that her client was standing on her plea of not guilty. The court
reasonably understood this to mean it would be necessary to
set a trial date. But there is nothing in our record suggesting
that Space requested a specific trial date, and certainly nothing
suggesting that she requested a trial date outside the statutory
6-month period. Nor can we infer such a request from the col-
loquy between the court and defense counsel regarding the
proposed trial date.

When the court asked "September 20, 2021, for jury trial;
does that work?" it was asking a scheduling question, not a
speedy trial question. And when defense counsel responded,
"Yes. Thank you," she was answering that scheduling question.
Defense counsel was neither commenting on the speedy trial
calculation nor agreeing not to move for absolute discharge
once the 6-month period expired. At least for purposes of the
invited error doctrine, we find it significant that the issue of
speedy trial was not raised, expressly or impliedly, when the
court was proposing a trial date.

We pause here to observe that if the issue of speedy trial had
been expressly raised by either the State or the trial court dur-
ing the scheduling discussion, then the series of events which
culminated in absolute discharge could have been averted. A
discussion of speedy trial would presumably have alerted the
court to the fact that the trial date it was proposing was beyond
the 6-month deadline. The court could then have explored with
Space whether she was willing to freely and voluntarily waive
speedy trial until the September 20, 2021, date. If she was not,

the court could have set trial for a date within the 6-month speedy trial period.

[15] Finally, we reject the State's suggestion that defense counsel "manipulate[d] the Court"[28] by agreeing to a trial date that was plainly outside the speedy trial period. It is true that both the prosecutor and the defense counsel owe a duty of candor to the court,[29] and here, neither attorney advised the court that the trial date it proposed was outside the 6-month speedy trial period. But our cases do not require a defendant to either demand a speedy trial or object to a trial date on such grounds.[30] As we recognized long ago, a criminal defendant's failure to demand a trial within the 6-month statutory speedy trial period, or to object to a trial date set beyond such period, does not constitute a waiver of his or her speedy trial rights.[31] And here, it is notable that the information necessary to calculate the speedy trial deadline was equally available to the court and the prosecutor. On this record, we cannot find that defense counsel manipulated the court or misrepresented any material fact regarding the speedy trial clock. Instead, we question why the State did not alert the trial court to the fact that the proposed trial date fell outside the 6-month speedy trial period.

We have long recognized the State has the primary burden of bringing an accused person to trial within the time provided by law.[32] And the Legislature has made it "the duty of the county attorney to bring to the attention of the trial court" any cases entitled to preferential treatment under the speedy trial statutes.[33] It follows, then, that in addition to carefully

---

[28] Brief for appellant at 8.

[29] See Neb. Ct. R. of Prof. Cond. § 3-503.3 (rev. 2016) (providing that lawyers shall not knowingly make false statements to tribunal or fail to correct false statement of material fact or law made to tribunal by lawyer).

[30] *Alvarez, supra* note 25.

[31] *Id.*

[32] *State v. Hernandez*, 309 Neb. 299, 959 N.W.2d 769 (2021).

[33] See Neb. Rev. Stat. § 29-1205 (Reissue 2016).

monitoring the speedy trial deadline, the prosecution should promptly bring to the trial court's attention any potential concerns regarding the defendant's right to a speedy trial.

On this record, the trial court correctly found there was just 1 day of excludable time under § 29-1207(4), and it correctly concluded the State failed to bring Space to trial before the running of the 6-month speedy trial period. Under § 29-1208, Space was entitled to absolute discharge.

## CONCLUSION

For the foregoing reasons, the exception is overruled.

EXCEPTION OVERRULED.

FREUDENBERG, J., dissenting.

I respectfully dissent from the majority opinion based upon the reasoning in my concurring opinions in *State v. Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021), and *State v. Bixby*, 311 Neb. 110, 971 N.W.2d 120 (2022). Through judicial construction, this court has improperly created a statutory speedy trial scheme that is unsupported by the language of the relevant statutes. The majority opinion in this matter further expands the application of such improperly created scheme.

To fully understand the genesis of our judicially created speedy trial scheme, we must recall situations represented by cases like that decided by the U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). In that matter, a Kentucky prosecuting authority did not bring a murder suspect to trial for more than 5 years after his arrest. The significant delay was due in large part to tactical continuances sought by the prosecutors. This and similar situations refocused federal and state judiciaries upon the meaningful enforcement of constitutional speedy trial rights. It further spurred state legislatures to pass statutory speedy trial legislation.

In 1971, Nebraska passed 1971 Neb. Laws, L.B. 436, creating the State's first statutory speedy trial right which was separate and distinct from existing constitutional speedy trial

provisions. Since that time, only a few revisions to the statutory framework have occurred, none of which are material to this matter or the basis of this dissent.

The Nebraska statutory speedy trial scheme is set forth in Neb. Rev. Stat. §§ 29-1201 through 29-1209 (Reissue 2016 & Cum. Supp. 2020). The nuts and bolts of the speedy trial scheme are found in § 29-1207, which states:

> (1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section.
>
> (2) Such six-month period shall commence to run from the date the indictment is returned or the information filed . . . .
>
> (3) If a defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, such period shall commence to run from the date of the mistrial, order granting a new trial, or the mandate on remand.

Subsection (4) of § 29-1207 sets forth a number of events which create periods of excludable time under the statutory speedy trial calculations.

Section 29-1208 creates the remedy of "absolute discharge" if a defendant is not brought to trial within the 6-month period established in § 29-1207, as "extended by excluded periods." Section 29-1205 directs the trial courts to give preference to criminal cases over civil cases in its trial settings and directs county attorneys "to bring to the attention of the trial court any cases falling within this subdivision, and he [or she] shall generally advise the court of facts relevant in determining the order of cases to be tried."

The first time this court interpreted the new statutory speedy trial scheme was in *State v. Alvarez*, 189 Neb. 281, 202 N.W.2d 604 (1972). In *Alvarez*, the defendant's trial was set more than 6 months after the applicable statutory starting point of the speedy trial clock. The record was "completely silent as to what, if anything, occurred between the court, defendant, and his counsel at the time the order setting the trial date was

entered." *Id.* at 285, 202 N.W.2d at 607. The defendant moved for absolute discharge pursuant to § 29-1208 after expiration of the applicable 6-month period. A hearing was held, and the court found that "'good cause'" existed for the court's delayed trial setting. *Alvarez*, 189 Neb. at 286, 202 N.W.2d at 607. Pursuant to the excludable periods established under § 29-1207(4), "good cause" could be the basis for "[o]ther periods of delay not specifically enumerated" in that section.

The defendant in *Alvarez* ultimately appealed the trial court's ruling to this court, which upheld the trial court's finding of good cause in affirming the defendant's conviction. In doing so, this court took the opportunity to address several issues relating to Nebraska's recently passed speedy trial statutes. This court established that "[t]he primary burden is upon the State, that is, the prosecutor and the court, to bring the accused person to trial within the time provided by law." *Id.* at 291, 202 N.W.2d at 610. This court also placed the burden of proof upon the prosecution to prove the existence of one or more of excludable periods of time provided for by § 29-1207(4). See *Alvarez, supra*.

However, this court then went well beyond what was required for the establishment of necessary procedures to affect the reasonable application of this new statutory speedy trial scheme when discussing what does and does not constitute a defendant's waiver of the statutory right to absolute discharge. Our discussion of waiver was unmoored from the relevant statutory language and inconsistent with this court's recognized implementation of "waiver" principles applicable to other statutorily created rights.

In the *Alvarez* opinion, this court identified one of the issues to be addressed as follows: "When the trial court sets a trial date which is more than 6 months after the filing of the information, must the defendant immediately take exception thereto, or may he wait for the 6-month period to elapse and then file a motion for discharge?" *Id.* at 287-88, 202 N.W.2d at 608. In answering, this court stated:

A failure by a defendant to demand a trial within the time he [or she] is required to be brought to trial as provided by sections 29-1205 to 29-1209, R. S. Supp., 1971, or to object at the time trial date is set does not constitute a waiver of [the defendant's] rights under either the statutes or the Constitution of Nebraska, but is a factor which, while not constituting good cause by itself, may be considered along with other circumstances in determining whether there was "good cause" for a delay . . . .

*State v. Alvarez*, 189 Neb. 281, 291-92, 202 N.W.2d 604, 610 (1972).

This court cited *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to support that position. *Barker* placed "the primary burden on the courts and the prosecutors to assure that cases are brought to trial." 407 U.S. at 514. Further, the Court *in Barker* pointed out that a defendant's constitutional speedy trial right is not viewed in the same manner as other fundamental constitutional rights when weighing a defendant's inaction to enforce such right:

We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives [the] right. This does not mean, however, that the defendant has no responsibility to assert [the] right. We think the better rule is that the defendant's assertion of or failure to assert [the] right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.

407 U.S. at 528. Later, in discussing the "defendant's responsibility to assert [the] right," the *Barker* Court stated:

The defendant's assertion of [the] speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he [or she] was denied a speedy trial.

407 U.S. at 531-32.

Even though the U.S. Supreme Court in *Barker* was clearly reviewing a fundamental right under the Constitution rather

than a statutory right, it presented a more balanced approach than that adopted by this court in *Alvarez, supra*, for a statutorily created right. By describing in *Alvarez* the failure to assert the speedy trial right as only a consideration of unspecified weight in a good cause analysis, rather than a consideration of strong evidentiary weight that will make it difficult to prove the denial of the right, this court in *Alvarez* relieved a defendant of a duty to assert the right to an extent that is inconsistent with *Barker*.

This approach to a defendant's failure to assert the speedy trial right is especially untenable in the context of a statutory right to speedy trial. The 6-month statutory speedy trial right is separate from the constitutional speedy trial right. *State v. Lee,* 282 Neb. 652, 807 N.W.2d 96 (2011). Thus, for example, outside the lens of ineffective assistance claims, the statutory right to a speedy trial is not cognizable in a postconviction proceeding, because the statutory speedy trial right is not a constitutional right. *Id.* Thus, not only did we misunderstand *Barker*, but our reliance on *Barker* was wholly misplaced. We must construe the statutory speedy trial scheme the same way we would any other set of statutory rights. Our holdings in this case and its primogenitors are directly contrary to the plain language of the speedy trial statutes and the traditional notions of waiver that the Legislature would have considered when drafting the statutory language.

We have long held that statutory rights are within the classification of those rights that can be waived by silence or acquiescence. *State v. Meers*, 257 Neb. 398, 598 N.W.2d 435 (1999); *Sedlacek v. State*, 147 Neb. 834, 25 N.W.2d 533 (1946). Even when statutory rights relate in some way to constitutional rights, silence or inaction can traditionally waive those rights.

Thus, by failing to make a challenge for cause, a defendant can waive objections to the competency of a juror. See *Fillion v. State*, 5 Neb. 351 (1877). By remaining silent and failing to object, a defendant can waive the introduction of evidence

unconstitutionally obtained and used against the defendant at trial. See *State v. Howard*, 182 Neb. 411, 155 N.W.2d 339 (1967). By failing to object, a defendant can waive prosecutorial misconduct and the impartiality of a judge due to ex parte communications. See, *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013), *disapproved on other grounds, State v. Vann*, 306 Neb. 91, 944 N.W.2d 503 (2020); *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999). Through silence, a defendant can waive the unconstitutionality of a charging statute. A defendant's failure to object can waive the right to confrontation. See *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). A defendant's failure to object waives alleged violations of procedural due process. *Id.*

In this context, we have generally said that the "'[d]efense may not remain silent in hopes that trial court will fall into reversible error where possible error could have been passed upon and cured, if need be, by a properly timed objection.'" *State v. Howard*, 182 Neb. at 418, 155 N.W.2d at 344. In *State v. Leon-Simaj*, 300 Neb. 317, 329, 913 N.W.2d 722, 731 (2018), we condemned the use of silence as a constitutional sword of gamesmanship:

> [W]e have rejected defendants' use of constitutional shields as swords of gamesmanship. Particularly, we have found that defendants who remain silent in the face of trial error impacting important constitutional rights, and who gamble on a favorable outcome or raise the objection only once the alleged error can no longer be remedied, have waived the error.

We also explained in *Leon-Simaj* how silence can give the "false impression of acquiescence [and thereby] lull the court into taking actions that could not later be undone." 300 Neb. at 329-30, 913 N.W.2d at 731 (internal quotation marks omitted).

This court's position in *State v. Alvarez*, 189 Neb. 281, 202 N.W.22d 604 (1972), and its progeny promotes gamesmanship by encouraging the defense to remain silent in the hopes that

the court will not realize any small miscalculation that could lead to statutory absolute discharge—an error that cannot later be undone. Indeed, the scheme this court shaped in *Alvarez* places defense counsel in a difficult position when a court sets an untimely trial date and asks for counsel's input. Defense counsel must choose between properly exercising a party's expected duty of candor to the court and doing what might be most beneficial for the defendant by giving a false impression of acquiescence in the hopes that the miscalculation will continue to go unnoticed.

In no way do I suggest that counsel for the defense in the case at bar intentionally misled the court or acted inappropriately under the scheme that this court has created. My point, however, is that with the scheme this court has created, even if defense counsel knows that the date set by the trial court is beyond the statutory 6-month limit, there is no duty to advise the court of the error so a timely trial date can be set. Instead, the opposite is true; our statutory speedy trial scheme discourages candor and arguably even makes raising a speedy trial objection before the statutory period has run a potential subject of ineffective assistance claims.

Such a system is contrary to what we expect from attorneys appearing before our courts. Without justification, it encourages gamesmanship that procedurally derails our criminal justice system from reaching the merits of the defendant's guilt or innocence.

The more reasonable approach would be the application of the waiver principles that govern other statutorily created rights, as previously set forth. When the court sets a trial date, the defense's failure to timely assert that the date falls outside of the statutory 6-month period should constitute a waiver of the statutory right to absolute discharge based on that trial date. This still empowers criminal defendants to make demands for trials within the 6-month time limit but does not turn criminal proceedings into a game of "gotcha" by defendants not asserting the statutory right to speedy trial until after the expiration

of the speedy trial time limit. The language of the speedy trial statutes clearly created a right for criminal defendants to push proceedings forward to trial if they wish to do so. This court has twisted that right into a procedural trap for trial courts.

Until recently, because either the record was silent on the issue, see *State v. Alvarez*, 189 Neb. 281, 202 N.W.2d 604 (1972), or the issue simply had not been raised, a defendant's participation in setting a trial date had not been evaluated under our statutory speedy trial scheme. Such issue has been squarely raised here, and the majority opinion moves our flawed system one step further in the wrong direction.

Here, the defendant and her counsel were present when the court discussed the trial date with the parties and they agreed to a trial date that fell outside of the allowable speedy trial time limit. After the statutory time limit had passed but before the agreed-upon trial date, the defendant filed a motion for absolute discharge, which was granted. Even under a constitutional analysis as used in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the defendant had a responsibility to assert the right to a speedy trial prior to his or her request for discharge.

The majority opinion now allows participation by the defense in the setting of an untimely trial date and then a successful motion to discharge under § 29-1208 based upon the very date the defense agreed upon. Under the majority's understanding of the current statutory speedy trial scheme, the safest path for trial courts is to establish progression orders with set trial dates that will require knowing continuances if they are to be moved beyond the established 6-month limit. Extra caution should be taken in situations where initial appearances are waived by the entry of written not guilty pleas.

Instead of expanding on our previous misstep, we should correct the error this court committed in *Alvarez* as described herein. For the foregoing reason, I respectfully dissent.